In Equity.

UNION SAFE DEPOSIT AND TRUST COMPANY

*vs.*

FRANK W. DUDLEY et als.

Cumberland.    Opinion August 6, 1908.

*Wills.    Construction.    Trust Estate.    "Issue."    Revised Statutes, chapter 1, section 6, paragraph IX.*

The word "issue" as used in wills is an ambiguous term.    It may be restricted to children only, or include descendants generally or descendants taking by right of representation.    Whether it shall be construed to have one or the other meaning depends entirely upon the intention of the testator as gathered from the context of the whole will, interpreted according to the established rules of construction.

In the construction of a will the word "issue" is to be interpreted according to its primary signification as importing descendants, unless it appears from the provisions of the will, or from extrinsic circumstances proper to be considered, that the testator used the word in its secondary or restricted meaning of children.

The words "and lawful issue, if any, of the body," as used by a testator in his will *held* to mean lineal descendants taking by right of representation, per stirpes and not per capita.

A testator by his will created a trust estate and in relation to the income of the trust estate, directed, among other things, as follows :    "To pay of the net income of said trust estate, after the payment of the expenses of said trust fund, one fourth to my sister Frances Jane Dudley, if living at my decease, quarterly during her natural life; one fourth to my nephew, Augustus Palmer Dudley, son of my said sister Frances Jane Dudley, if living at my decease, quarterly during his natural life."    The testator

further provided as follows: "In case my said sister Frances Jane Dudley is not living at my decease or at her decease thereafter, my trustees are to pay her share of the income of the trust fund under this will quarterly in equal shares to her said children, or the survivor of them if the others have deceased, and the lawful issue of the body of those deceased, if any, or if all of her said children are deceased leaving lawful issue of their bodies to such issue, the aforesaid issue taking only the parent's share." Frances Jane Dudley died prior to the death of the testator leaving three surviving children of whom the said Augustus Palmer Dudley was one. *Held:* That the said Augustus Palmer Dudley acquired by the death of his mother the right to receive an additional one-twelfth of the net income of the trust fund and which added to the one fourth share already given to him by the testator made his total share one-third of the net income.

The testator died April 18, 1905, and the said Augustus Pamler Dudley died July 15, 1905, three days before the first quarterly payment fell due. *Held:* (1) That the language of the will gave the said Augustus Palmer Dudley a vested interest in the net income of the trust fund. (2) That the manner and time of payment, "quarterly during his natural life," was not intended by the testator to be annexed to the legacy as a condition precedent to its vesting. (3) That the gift of the share of the income to the said Augustus Palmer Dudley was absolute, the words "quarterly during his natural life" being a direction as to manner and time of payment only. (4) That the estate of the said Augustus Palmer Dudley is entitled to his share of the net income of the trust fund from the date of the testator's death to the date of the death of the said Augustus Palmer Dudley.

In relation to the net income of the aforesaid trust estate between April 18, 1905, the date of the testator's death, and July 15, 1905, the date of the death of the said Augustus Palmer Dudley, it appeared that $3137.50 of interest coupons, attached to bonds not due at the testator's death, matured and were collected between April 18 and July 15, 1905, of which sum $1721.19 was interest which accrued on said bonds prior to the testator's death, although not due and payable until after his death; that there were other coupons on said bonds amounting to $1775 which became due and were collected after the death of the said Augustus Palmer Dudley, of which $368.28 accrued between April 18 and July 15, 1905; that $406.83 of interest on demand deposits in banks became due and was collected between April 18 and July 15, 1905, of which $106.85 accrued before the death of the testator; that there was $406.61 of other interest on said deposits collected after the death of the said Augustus Palmer Dudley of which $76.73 accrued prior to his death; that there was a dividend of $75 declared on bank stock July, 1905, which was collected after the death of the said Augustus Palmer Dudley.

*Held:* (1) That the income of the trust estate between the date of the testator's death and the date of the death of the said Augustus Palmer Dudley and in which the estate of the said Augustus Palmer Dudley is to share comprised the following, viz: The total amount of the coupons

which became payable subsequent to the testator's death and prior to the death of the said Augustus Palmer Dudley amounting to $3137.50; the interest on the demand deposits which accrued between the death of the testator and the death of the said Augustus Palmer Dudley, amounting to $376.71; the dividend of $75, declared July 1, 1905, and in all $3589.21. (2) That at the death of said Augustus Palmer Dudley his share of said net income was one-third part of said sum of $3589.21 and that said third part is payable to the executor of his estate.

Where a testator by his will created a trust estate with certain of the net income thereof to be paid to certain beneficiaries and one of the beneficiaries died prior to the death of the testator and another died after the death of the testator, the will was construed and it was determined to whom and in what shares the net income given to the deceased beneficiaries should be paid.

In equity. On report. Decree to be in accordance with opinion.

Bill in equity asking for the construction of the will of Llewellyn Scott Wyman, late of Portland, deceased, brought by the plaintiff corporation against divers defendants. April 25, 1907, the cause came on to be heard on bill and answers before the Justice of the first instance and " there appearing to be questions of law of sufficient importance or doubt to justify the same and the parties agreeing thereto " the cause was reported to the Law Court.

The case appears in the opinion.

*Drummond & Drummond, and Henry B. Cleaves*, for plaintiff.

*Verrill, Hale & Booth*, for Fifth Avenue Trust Company, defendant.

*Charles W. Michael*, for Abbie J. Malcolm et als., defendants.

*Albert D. Jones*, for Archie W. Dudley et als., defendants.

*Wm. H. Looney*, for Frank W. Dudley, defendant.

*John T. Fagan*, for Frances Jane Bennett et al., defendants.

*Cassandra H. Dudley*, for Janey Dudley et al., defendants.

SITTING: EMERY, C. J., WHITEHOUSE, PEABODY, SPEAR, CORNISH, KING, JJ.

KING, J.　Bill in equity reported to this court.

Llewellyn Scott Wyman, late of Portland, died April 18, 1905, leaving a will executed June 28, 1901, proved and allowed in the Probate Court for Cumberland County, Maine, June 5, 1905.

The complainant, having been appointed executor and confirmed as trustee thereunder, brings this bill asking for a construction of certain provisions of said will, and to whom and in what portions the trustee shall pay certain of the net income of the trust estate.

By the fourth item of the will the testator devised and bequeathed one-half of the residue of his estate to the complainant in trust.

"2. To pay of the net income of said trust estate, after the payment of the expenses of said trust fund one-fourth ($\frac{1}{4}$) to my sister Frances Jane Dudley, if living at my decease, quarterly during her natural life; one fourth to my nephew, Augustus Palmer Dudley, son of my said sister Frances Jane Dudley, if living at my decease, quarterly during his natural life; one fourth ($\frac{1}{4}$) to my nephew Frank Wyman Dudley, son of my said sister Frances Jane Dudley, if living at my decease, quarterly during his natural life; and one fourth ($\frac{1}{4}$) to my niece Abbie Malcolm, daughter of my said sister Frances Jane Dudley, if living at my decease, quarterly during her natural life.

"3. In case my said sister Frances Jane Dudley is not living at my decease or at her decease thereafter, my trustees are to pay her share of the income of the trust fund under this will quarterly in equal shares to her said children, or the survivor of them if the others have deceased, and the lawful issue of the body of those deceased, if any, or if all of her said children are deceased leaving lawful issue of their bodies to such issue, the aforesaid issue taking only the parent's share, until the termination of this trust as hereinafter provided under the 7th clause of this item of my will.

"4. In case my said nephew Augustus Palmer Dudley is not living at my decease, or at his decease thereafter, my trustees are to pay his share of the income under this will quarterly in equal shares to his said mother, brother and sister, or the survivor or survivors of them if any have deceased, and the lawful issue, if any, of the body of those deceased; or if his said mother, brother and sister are deceased leaving lawful issue of their bodies, to such issue, the aforesaid issue taking only the deceased parent's share until the termination of this trust as hereinafter provided under the 7th clause of this item of my will."

Like provisions, mutatis mutandis, are made for the disposal of the shares of Frank Wyman Dudley and Abbie Malcolm in the event of their death. The trust is to terminate at the expiration of twenty years after the death of the survivor of the beneficiaries who were in being at the testator's death.

Frances Jane Dudley died prior to the death of the testator leaving Augustus Palmer Dudley, Frank Wyman Dudley, and Abbie Malcolm as her only surviving children.

The bill as amended shows that there were also nine grandchildren and three great grandchildren of Frances Jane Dudley surviving her, viz : — Archie W. Dudley, Hester Sophia Dudley and Una Gladys Dudley, children of Edwin R. Dudley, a son of Frances Jane Dudley, deceased prior to her death ; Janey Dudley and Grace Gilman Dudley, children of said Augustus Palmer Dudley ; Frances Jane Bennett, Sarah Percy Barnes, T. J. Jackson Malcolm, and Archibald Warren Malcolm, children of said Abbie Malcolm ; William R. Bennett, child of the grandchild, Frances Jane Bennett, Rachel Dudley Barnes and Geneva Percy Barnes, children of the grandchild Sarah Percy Barnes. These surviving children (except Augustus Palmer Dudley now deceased), and all the grandchildren and great grandchildren are made parties defendant in the bill.

Augustus Palmer Dudley died July 15, 1905, leaving as his only heirs at law and lawful issue of his body his minor children above named, Janey Dudley and Grace Gilman Dudley.

The Fifth Avenue Trust Company of New York as executor of the last will and testament of Augustus Palmer Dudley is also made a party defendant in the bill.

The eighth paragraph of the bill as amended reads :

"Eighth : That upon the appointment of said Complainant as Executor aforesaid, it took possession as a part of the estate of the said testator, certain bonds upon which interest was payable, in some cases semi-annually and in some cases quarterly,—said interest being evidenced by coupons or interest warrants attached to said bonds, and none of which bonds were, at the date of the death of the testator, due and payable ; that said coupons to a large amount,

to wit, to the amount of $3137.50, were payable after the date of the death of said testator but evidenced interest which had in part only accrued after said date, to wit, to the sum of $1416.31; that as said Executor, it also took possession of certain deposits in certain banks and trust companies, said deposits being payable upon demand, and upon which interest was payable after the death of said testator, to wit, in the sum of $406.83, a part only of which interest accrued on said deposits after the death of said testator, to wit, the sum of $299.98; that in addition to said above mentioned interest, there also accrued upon said estate of said testator and was collected by said complainant as executor aforesaid, other income in the sum of $75 as a dividend upon certain bank stock, which said dividend was declared and payable on the first day of July A. D. 1905, but was not actually collected by said complainant as said Executor until the seventeenth day of November A. D. 1905; that in addition to said above mentioned interest and dividend, there also accrued upon said estate of said testator and was collected by said complainant as executor aforesaid, other interest upon said above described bonds evidenced by coupons and interest warrants aforesaid, said coupons and interest warrants being payable on different dates subsequent to the fifteenth day of July 1905, the date of the death of said Augustus Palmer Dudley, to wit, in the sum of $1775 and only a part thereof having accrued prior to said date, to wit, the sum of $368.28, and other interest upon said deposits collected on different dates subsequent to said fifteenth day of July 1905, to wit, in the sum of $400.61 and only a part thereof having accrued prior to said date, to wit, the sum of $76.73."

The questions propounded by the complaint are:

"(a)   Whether any portion of the net income of said trust estate accruing before the death of said testator but not payable until after said death goes to the Fifth Avenue Trust Company as the executor of the last will and testament of said Augustus Palmer Dudley, and, if so, what portion thereof.

"(b)   Whether any portion of the net income of said trust estate accruing between the date of the death of said testator and the date of the death of said Augustus Palmer Dudley, goes, upon the

death of said Augustus Palmer Dudley, to said Fifth Avenue Trust Company, as executor of the last will and testament of said Augustus Palmer Dudley, and, if so, what portion thereof.

"(c)   Whether any portion of the net income of said trust estate accruing before the death of the said Augustus Palmer Dudley but not payable until after said death, goes upon the death of said Augustus Palmer Dudley to the said Fifth Avenue Trust Company, as executor of the estate of the said Augustus Palmer Dudley and, if so, what portion thereof.

"(d)   What portion of the share of said income given by said fourth paragraph to said Frances Jane Dudley, she having deceased prior to the death of said testator, and said Augustus Palmer Dudley having deceased subsequently to the death of both said Frances and said testator, goes to said Frank W. Dudley and said Abbie G. Malcolm.

"(e)   Whether any portion of the share of said income given by said fourth paragraph to said Frances Jane Dudley, she having deceased prior to the testator, and said Augustus Palmer Dudley having deceased subsequently to the death of both said Frances and said testator, goes to said Archie W. Dudley, Hester Sophia Dudley, Una Gladys Dudley, Janey Dudley and Grace Gilman Dudley, Frances Jane Bennett, Sarah Percy Barnes, T. J. Jackson Malcolm, Archibald Warren Malcolm, William R. Bennett, Rachel Dudley Barnes and Geneva Percy Barnes, or either or any of them, and if so, to which of them, and what portions thereof and in what proportion.

"(f)   Whether upon the death of said Augustus Palmer Dudley, he having died subsequently to the death of both said Frances Jane Dudley, and said testator, any portion of the share of said income given to him under item 2 of the fourth paragraph of said will goes to said Archie W. Dudley, Hester Sophia Dudley, Una Gladys Dudley, Janey Dudley, Grace Gilman Dudley, Frances Jane Bennett, Sarah Percy Barnes, T. J. Jackson Malcolm, Archibald Warren Malcolm, William R. Bennett, Rachel Dudley Barnes and Geneva Percy Barnes, or to either of them, and if so, to which of them, what portion and in what proportions."

The questions presented may be summarized as follows :

1.    To whom was Frances Jane Dudley's share of the net income payable, she having predeceased the testator?

2.    What fractional share of the income was Augustus Palmer Dudley entitled to at the time of his death, and to whom and in what portions is that share thereafter to be payable?

3.    Is the interest which accrued on the demand deposits and the coupon bonds prior to the testator's death, or any part of it, to form a part of the principal of the trust fund, or is it to be regarded as income to be distributed to the beneficiaries?

4.    Whether any portion of the net income of the trust fund is payable to the Fifth Avenue Trust Company as executor of the will of Augustus Palmer Dudley, he having deceased within the first quarterly period after the testator's death, and if so of what does that income consist?

It is contended on behalf of the respondents, Archie W. Dudley, Hester Sophia Dudley and Una Gladys Dudley, children of Edwin R. Dudley, a son of Frances Jane Dudley, deceased prior to her death, that upon the death of said Frances Jane they became entitled to a portion of her original share of the income.    We think this contention not maintainable.

It appears manifest from the provisions of paragraph 3 of item fourth of the will that in case of the death of Frances Jane Dudley her share of the net income of the trust fund was to be paid in equal shares to her children, Augustus, Frank and Abbie, if they all survived her.    The words "her said children," used in paragraph 3, obviously relate to her two sons and daughter previously mentioned in paragraph 2.    It follows from this construction that Augustus acquired by the death of his mother, Frances, the right to receive an additional one-twelfth of the net income of the trust, and that at the time of his death his share was one-third.

It is provided by paragraph 4 of item fourth that in case of the death of Augustus "my trustees are to pay his share of the income under this will quarterly in equal shares to his said mother, brother and sister, or the survivor or survivors of them if any have deceased, and the lawful issue, if any, of the body of those deceased ; or if

his said mother, brother and sister are deceased leaving lawful issue of their bodies, to such issue, the aforesaid issue taking only the deceased parent's share, until the termination of this trust as hereinafter provided under the 7th clause of this item of my will."

It is claimed by some of the respondents that the one-twelfth of the income of the trust which Augustus acquired upon the death of his mother, Frances, did not form a part of " his share of the income  .  .  .  .  under this will," which was disposed of under the provisions of paragraph 4.

If those words used in paragraph 4 are limited to Augustus' original share then the one-twelfth which had fallen to him at the death of his mother was undisposed of by the will; and as similar provisions were made for the disposal of the shares of the mother, brother and sister, in the event of the death of either of them, any share falling to either of them at the prior death of any other life legatee would be undisposed of.

It was unquestionably the intention of the testator to dispose of the entire income of the trust fund for the whole period of the trust, for there is no provision under which any part of it can accumulate and become a part of the principal.   Augustus acquired the additional one-twelfth, at the death of his mother, under the express provisions of the will, except for which he would not have been entitled to it.   The language of paragraph 4 is broad enough to include that one-twelfth so acquired, and it should be so construed.

At Augustus' death his share ($\frac{1}{3}$) was to be paid, under the provisions of paragraph 4, one-third thereof, or one-ninth, to each of his surviving brother and sister, and the remaining one-ninth to " the lawful issue, if any, of the body of " the mother, she having previously deceased.

Who are comprehended in the expression as thus used by the testator, " and the lawful issue, if any, of the body of those deceased ? "

It is not our purpose to undertake any extended discussion of the meaning of the word " issue " as used in wills, or to consider at length the vast number of cases in which that word has been variously construed.   Each case is but an application of the uni-

versal doctrine that in the construction of wills the intention of the testator is to govern when it can be ascertained from the will itself and is not inconsistent with the rules of law. It has been correctly said that the word " issue " as used in wills is an ambiguous term. It may be restricted to children only, or include descendants generally, or descendants taking by right of representation ; and whether it shall be construed to have the one or the other meaning depends entirely upon the intention of the testator as gathered from the context of the whole will, interpreted according to the established rules of construction.

With respect to the words "lawful issue, if any, of the body" as used by the testator, it is suggested :

First. That only children are meant, under which construction Frank and Abbie, being the only surviving children of Frances Jane, would take the remaining one-ninth.

The earlier English cases held that the primary meaning of "issue" was all descendants, and its secondary meaning children. Chancellor Kent, however, seems to have adopted a different view, saying, (4 Com. 278) : "The term issue may be used either as a word of purchase or of limitation, but it is generally used by the testator as synonymous with child or children." And Judge Redfield in his work on Wills, says : "It seems to us that the term ' issue ' in its primary signification imports children, and that it is a secondary meaning, by which it has been held to include the issue of issue, in an indefinite descending line." 2 Redfield on Wills, 3d Ed. 37, 38, note 5.

But the great weight of authority is that the word "issue" in its general sense, unconfined by any indication or intention to restrict its meaning, imports descendants. *Leigh* v. *Norbury*, 13 Ves. 340 ; *Tier* v. *Pennell*, 1 Edw. Ch. 354 ; 2 Wash. R. P. 318 ; Re Corrie, 32 Beav. 426 ; Re Kavenaugh, 13 Jr. Ch. 120 : *Drake* v. *Drake*, 134 N. Y. 220, 224 ; *Soper* v. *Brown*, 136 N. Y., 244-248 ; *Chwatal* v. *Schreiner*, 148 N. Y. 683 ; *Jackson* v. *Jackson*, 153 Mass. 374 ; *Dexter* v. *Inches*, 147 Mass. 324 ; Words and Phrases, Vol. 4, page 3782 ; Am & Eng. Ency, Law, 2d Ed, Vol. 17, page 543.

The rule deducible from the authorities is that the word "issue" is to be interpreted according to its primary signification as importing descendants, unless it appears from the provisions of the will, or extrinsic circumstances proper to be considered, that the testator used the word in its secondary or restricted meaning of children. As said in *Soper* v. *Brown*, supra : "There are many authorities on wills in which the word has been construed to mean children only. Those authorities rest upon the undisputed principle that words used by a testator in his will are to be interpreted in the sense which he attributed to them, where it appears by the context that they were not used in their strict legal sense."

In support of this construction, that "issue" means children, it is suggested that the testator used the expression "the aforesaid issue taking only the deceased parent's share," and therefore that the word "parent," being used correlatively with "issue," restricts the latter to mean children only.

There are authorities which hold that the word "issue" when used in connection with the word "parent" will be understood to mean children only. Such seems to be the English rule, as laid down in *Sibley* v. *Perry*, 7 Ves. 522, and *Pruen* v. *Osborne*, 11 Sim. 132. This rule though criticised has been followed by some American Courts.

One of the most recent cases following the rule that has come to our notice is *Coyle* v. *Coyle*, (Court of Chancery of New Jersey, Oct. 26, 1907) 68 Atl. 1, R. 224. In this case the testator provided that the residue of his estate, after the death of his wife, should be divided equally, share and share alike, between his three children, "or such of them as shall survive my said wife, but if any of my said children shall have died, leaving lawful issue, such issue shall take the share their parent would have taken if living." Leaming, V. C. reaches the result that "issue" is to be restricted to the meaning of children only, but saying :

"I do not think I should feel at liberty to adopt the view that this language discloses the intent of testator to use the word "issue" in the restricted sense referred to with sufficient clearness to warrant a court in disregarding the natural significance of the word, were

it · not for the fact that eminent jurists have in the past adopted that view (citing *Sibley* v. *Perry*). . . . I think it may be fairly said that the determination of *Sibley* v. *Perry* does not appear to have been wholly free from the influence of considerations arising from other provisions of the will and circumstances surrounding it; but the case appears to have always stood as authority for the rule of construction stated, though it has not escaped severe criticism." See criticism in *Ralph* v. *Carrick*, 11 Chancery Division, P. 873.

He also states that in Massachusetts the same rule is adopted, citing only *King* v. *Savage*, 121 Mass. 303, and that *Sibley* v. *Perry* has been cited with approval in his own court. Continuing he says :

" I would add, however, that I am strongly impressed that the testator's purpose may have simply been to secure to the line of any child who should predecease the life tenant, leaving descendants, the one-third share which such child would have received if living at the termination of the life estate, or, in other words, that the share should descend according to law if lineal descendants existed. . . . . A contrary intent would seem to call for some clear and specific statement of a contrary purpose. But, as already stated, I am impelled to give to the language used the force which the adjudicated cases seem to require." We have thus quoted from this recent case to show that the Vice Chancellor construed the word " issue " to have the restricted meaning of children only because he felt impelled to do so by reason of what he regarded as controlling precedent, and not because such construction satisfied his reason and judgment. We do not feel so impelled; our court is not committed to the doctrine of *Sibley* v. *Perry*. That doctrine seems not to have been wholly satisfactory to the English judges.

In *Ralph* v. *Carrick*, 11 Chancery Division, 873, Lord Justice James said :

"It is, however, I think settled, but rather by the case of *Pruen* v. *Osborne*, than by *Sibley* v. *Perry*, that as a general rule when you find a gift to a person and then a gift to the issue of that person, such issue to take only the parent's share, the word issue is cut

down to mean children," and he proceeds to point out some of the hard consequences of that rule. Lord Justice Brett said, "after hearing what the effect of such a general rule may be as described by Lord Justice James, I should have no objection to be present at the funeral of *Sibley* v. *Perry.*"

We do not think it quite correct to say that "In Massachusetts the same view is adopted." It is true that in *King* v. *Savage*, 121 Mass. 303, where it was provided in the will that if the child had deceased its issue should "take the share of the deceased parent," it was said in the opinion : "In such a provision the word 'issue' would be limited to children," and *Sibley* v. *Perry*, and *Pruen* v. *Osborne*, are cited

But the question there decided was whether Henry Savage was entitled to receive the entire share of his father to the exclusion of Henry's own children, and it was held that he was, a result precisely the same as would have been reached if "issue" had been construed to mean descendants taking per stirpes.

In *Jackson* v. *Jackson*, 153 Mass. 374, it is said :

"Although in England, when the word 'issue' is used as the correlative of parent, it is held that the word 'parent' means father and mother, and that the word 'issue' means children, yet there as well as here the usual meaning of the word 'issue' is all lineal descendants. This is also the popular meaning in this Commonwealth. . . . . We think, that, as a matter of verbal construction, it would be as easy and natural to say that when the words 'parents' and 'issue' are used in connection with each other, the word 'parents' means ancestors, as that the word 'issue' means children ; and in the construction of any instrument it is always necessary to look beyond the literal meaning of words.

"The English decisions are collected in 2 Jarm Wills (Bigelow's Ed.) 101-107. They do not seem to be wholly satisfactory to the English judges, and in *Hills* v. *Barnard*, (152 Mass. 67) we refused to follow the decision in *Martin* v. *Holgate*, in a case closely resembling that, and reached a conclusion analogous to that of the Court of Appeals in *Ralph* v. *Carrick*. The tendency of our decisions has

been more and more to construe 'issue' where its meaning is unrestricted by the context, as including all lineal descendants and importing representation."

Notwithstanding the doctrine of *Sibley* v. *Perry*, we are of opinion that there is nothing in the context of this will which necessarily or reasonably shows that the testator intended to confine and restrict the meaning of ' issue ' to children only. He used the words "the aforesaid issue taking only the deceased parent's share" only to show his intention that the issue were to take by right of representation, and not to show that he used the word "issue" as synonymous with " children." He evidently meant the same and no more than if he had said "the aforesaid issue taking only by right of representation."

Further, it is to be noted that if "issue" as used by the testator is confined to children then there is the possibility and perhaps probability, that before the termination of the trust some part, or the whole, of the income of the trust would be undisposed of by reason of the death of some or all of the children of the life beneficiaries, a condition entirely inconsistent with the testator's scheme for the disposition of his estate. It seems reasonable then that the word "issue" was used by the testator in its primary meaning of descendants. Such construction is in accord with R. S., ch. 1, sec. 6, par. IX. : "The word 'issue' applied to the descent of estates, includes all lawful lineal descendants of the ancestor." Second, it is contended that if "issue" is intended to mean descendants then all lineal descendants are included taking per capita, under which construction all the defendants in the bill, except the Fifth Avenue Trust Company, would be comprehended in the lawful issue of Frances Jane Dudley. We think such is not the correct construction. The words " the aforesaid issue taking only the deceased parent's share" discloses the testator's intention that the issue should take by right of representation.

It is claimed, however, that these limiting words do not qualify the word "issue" as first used in the paragraph because separated from that by the semi-colon which appears between the words "deceased" and "or". There would be merit, perhaps, in this claim

if it was apparent that the punctuation so appearing was intentionally placed there. But on the contrary, we think it evident that the presence of the semi-colon was unintentional and probably a typographical error, for in no other of the paragraphs of the will, disposing of the shares of the nephews and nieces, where, as previously mentioned, the same phraseology is used, does a semi-colon appear in this place; and no reason can be gathered from the will, or attending circumstances, why the testator should intend that the language used in this paragraph should have any different meaning than it does as used in the others. It follows as a necessary conclusion that the true interpretation of the words "the lawful issue, if any, of the body" as used in this will means lineal descendants taking by right of representation, per stirpes and not per capita. Judicial precedent is not wanting for such construction. *Hall* v. *Hall*, 140, Mass. 267; *Dexter* v. *Inches*, 147 Mass. 324; *Hills* v. *Barnard*, 152 Mass. 67; *Jackson* v. *Jackson*, 153 Mass. 374; *Gardiner* v. *Savage*, 182 Mass. 521; *Coates* v. *Burton*, 191 Mass. 180.

It is therefore, the opinion of the court that at the death of Augustus his share (1-3) of the income of the trust, provided for in the "Fourth" item of the will, thereafter became payable as follows: 1-3 thereof, or 1-9 of the income, to Frank Wyman Dudley, 1-9 to Abbie Malcolm, and 1-9 to the lineal descendants of Frances Jane Dudley, taking by right of representation, which last 1-9 would go as follows, 1-4 thereof or 1-36 to Frank Wyman, 1-36 to Abbie, 1-36 to the issue of Edward R. Dudley, and 1-36 to the issue of Augustus.

How much of the net income of the trust, if any, goes to the Fifth Avenue Trust Company as executor of the last will and testament of Augustus Palmer Dudley?

The language in which a share of the income of the trust is given to Augustus is: "To pay of the net income of said trust estate, after paying the expenses of said trust fund . . . one-fourth to my nephew, Augustus Palmer Dudley . . . if living at my decease, quarterly during his natural life." The testator died April 18, 1905, and Augustus died July 15, 1905, three days

before the first quarterly payment fell due.   The language of the will gives Augustus a vested interest in the net income of the trust fund. The manner and time of payment, "quarterly during his natural life," was not intended by the testator to be annexed to the legacy as a condition precedent to its vesting.

The gift of the share of the income to the life beneficiary was absolute, the words "quarterly during his natural life" being a direction as to manner and time of payment only.

"Courts of Equity, in the construction of wills relating to personal estate, follow the rules of the Civil Law.   By that law, when a legacy is given absolutely, and the payment is postponed to a future definite period, the court considers the time as annexed to the payment, and not to the gift of the legacy, and treats the legacy as debitum in presenti, solvendum in futuro."   Redfield on Wills, 618.

It can hardly be said, however, that the testator here even postponed the time of payment.   He made, rather, a provision making the times of payment definite and frequent for the manifest benefit of the beneficiaries.

The will speaks from the date of the death of the testator, and the beneficiaries are entitled to the income from that date.   *Weld* v. *Putnam*, 70 Maine, 209.

We are of opinion, therefore, that Augustus' estate is entitled to his share of the net income of the trust fund from the testator's death to Augustus' death.

It remains then to determine what the net income of the trust fund was between April 18, and July 15, 1905.   The eighth paragraph of the bill as amended shows, that $3137.50 of interest coupons, attached to bonds, which were not due at the testator's death, matured and were collected between April 18, and July 15, 1905, of which sum, however, $1721.19 was interest which accrued on said bonds prior to the testator's death, although not due and payable till after his death; that there were other coupons on said bonds amounting to $1775 which became due and were collected after Augustus' death, of which $368.28 accrued between April 18 and July 15, 1905; that $406.83 of interest on demand deposits in banks became due and was collected between April 18 and

July 15, 1905, of which $106.85 accrued before the testator's death; that there was $400.61 of other interest on said deposits collected after Augustus' death of which $76.73 accrued prior to his death; and that there was a dividend of $75 declared on bank stock July 1, 1905, which was collected after Augustus' death.

Is any of the interest which accrued on the bonds and bank deposits prior to the testator's death to form a part of the capital of the trust, or is it all income?

It is a well settled general rule that an apportionment of interest on an ordinary debt is allowable, for the reason that it accrues from day to day for the creditor's forbearance to call in the principal to which he is entitled. 22 Cyc. 1484, and cases cited. The interest on the demand deposits must be governed by this rule. Those deposits were due and payable; the interest accrued thereon from day to day as compensation for the delay in withdrawing them.

This rule, however, does not apply to the interest on the bonds. They were not due. Each coupon evidenced an independent obligation to pay a sum of interest at a specified time. When detached from the bonds the coupons were separately negotiable, and enforceable at their maturity by the holder although he might not be the owner of the bond. At the time of the testator's death he had no right to demand and receive the accrued interest on the bonds because the coupons were not then due.

In the absence of express statute or agreement no apportionment of the interest upon coupon bonds can be allowed during the intervening periods fixed for the maturity of said coupons. Such interest is to be regarded as income at the time of the maturity of the coupons. So also are dividends declared on stocks to be regarded as income at the time when they are so declared.

We need only cite as authority the case of *Dexter* v. *Phillips*, 121 Mass. 178, in which the question was directly before the court, and so decided after an exhaustive review of the authorities.

It follows that the net income of the trust fund between the time of the testator's death and Augustus' death and in which the estate of Augustus is to share, comprises the following:

(1)   The total amount of the coupons which became payable subsequent to the testator's death and prior to Augustus' death, amounting to $3137.50.   (2)   the interest on the demand deposits which accrued between the testator's death and Augustus' death, amounting to $376.71.   (3)   the dividend of $75, declared July 1, 1905, and in all $3589.21.

It is unnecessary to answer seriatim the several questions proposed in the bill, but the result is :   That at Augustus' death his share of the net income of the trust fund in question was one-third ; that his executor, the Fifth Avenue Trust Company, is entitled to that one-third of the net income of the trust fund which accrued after the testator's death and prior to Augustus' death, as above determined ; and that from and after Augustus' death, and until some further change in the beneficiaries results, the net income of the said trust fund is to be paid, seventeen thirty-sixths (17-36) to Frank Wyman Dudley, seventeen thirty-sixths (17-36) to Abbie Malcolm, one thirty-sixth (1-36) to the issue of Edwin R. Dudley by right of representation, and one thirty-sixth (1-36) to the issue of Augustus' Palmer Dudley by right of representation.

We think it proper that out of the total of the income of said trust, in which the Fifth Avenue Trust Company is entitled to share as herein specified, the costs, and reasonable counsel fees of the parties, should be paid the amount thereof to be determined by the court below.

*Decree in accordance with this opinion.*