[Civ. A. No. 424.   Appellate Department, Superior Court, City and County of San Francisco.—December 1, 1933.]

IRVING H. KAHN, Appellant, v. WELLS FARGO BANK & UNION TRUST CO. (a California Corporation), as Executor, Respondent.

(2 Cal. Supp. 81.)

Bacigalupi, Elkus & Salinger for Appellant.

Heller, Ehrman, White & McAuliffe for Respondent.

GOODELL, J.—The late Cordelia Friedman Kahn created a trust in certain bonds of the face value of $71,000, and in some secured notes, stock and cash. During her lifetime the net income of the trust estate was to be paid to her, and upon her death certain specific sums of money out of the trust estate were to be distributed to certain beneficiaries, and the residue to Henrietta Kahn Wildberg and Irving H. Kahn. While Mrs. Kahn lived the bond interest was paid to her as the coupons became payable; and when the first coupons became payable after her death, the trustee apportioned the interest, and paid to her executor as much thereof as the number of days she lived after the last preceding interest date bore to the total number of days covered by the coupons. This suit, to recover from the estate the $1134.08 so paid, was brought by plaintiff in his own right and as assignee of Mrs. Wildberg, both residuary beneficiaries of the trust, and it presents the question whether such apportionment can be made in California in the absence of statutory authority.

The plaintiff's position is stated by counsel as follows: "These coupons, not having been due at the time of the death of Mrs. Kahn, should have been turned over to the beneficiaries under the trust", and, further, "upon coupons there is no such thing as an accrual, and only when the coupon becomes due is anything due. In other words, it [bond interest] does not accrue from day to day". In support of this contention plaintiff relies, to a large extent, upon *Dexter* v. *Phillips,* 121 Mass. 178 [23 Am. Rep. 261], and *Union Safe Deposit etc. Co.* v. *Dudley,* 104 Me. 297, 312 [72 Atl. 166]. The defendant relies chiefly upon *Wilson's Appeal,* 108 Pa. St. 344 [56 Am. Rep. 214]. There is no reported decision in this state upon the subject.

Mr. Perry in his work on Trusts and Trustees, seventh edition, section 556c, says: "Interest-money upon notes, bonds, mortgages, and similar securities accrues from day to day, although it is not payable until a fixed day; it is therefore apportionable, and trustees must pay the proportion accruing during the life of the tenant for life

to his representatives.'' The editor's annotation to this text is particularly apposite in view of the reliance placed by plaintiff on the Dexter case, and by defendant on *Wilson's Appeal.* He says: ''The English courts used to distinguish between interest on debts or notes and interest on the public funds, holding that the latter is not apportionable at common law, being within the class of payments coming due at fixed times. The Massachusetts court has followed the English rule as to interest on the public debt, except in cases coming within the Massachusetts statute of apportionment, and has applied the rule to interest on coupon bonds, including those of private corporations. The court reasons that each coupon is a separate contract to pay a definite amount at a certain time and represents an obligation distinct from the bond and from every other coupon'' (citing *Dexter* v. *Phillips, supra,* and *Union Safe Deposit etc. Co.* v. *Dudley, supra*). The editor then adds, ''In Pennsylvania and New York, a different view seems to have been taken'' (citing *Wilson's Appeal, supra,* and *United States Trust Co.* v. *Tobias,* 4 N. Y. Supp. 211, 21 Abb. (N. C.) 393).

The opinion in *Dexter* v. *Phillips* was written by Chief Justice Gray and is in two parts. The first deals with rents of real estate and interest on United States bonds and contains a comprehensive review of the English and American cases. The early English cases of *Pearly* v. *Smith,* 3 Atk. 260, and *Sherrard* v. *Sherrard,* 3 Atk. 502, are cited to the point that in England interest on the public debt was not apportionable. The early Pennsylvania case of *Earp's Will,* 1 Parsons Eq. Cas. 453, 467, is therein cited with the following commendation: ''On the other hand, a court of like jurisdiction in Pennsylvania, after a careful review of the earlier English cases, held that not only interest on the debt of the United States, but also interest on the funded debt of a canal corporation, was not apportionable.''

A further hearing was granted in the Dexter case, and the second part of the opinion deals with different securities. The court held that no valid distinction could be made between government bonds and those of the state or ''bonds or certificates of counties, cities or towns, or of railroad cor-

porations'' as long as there were interest coupons attached and that the interest was not apportionable.

In *Wilson's Appeal, supra,* the question presented was whether interest was apportionable on bonds of the city of Pittsburgh and the Philadelphia & Reading Coal & Iron Company in the absence of an apportionment statute. The court in a well-reasoned opinion written by Justice Paxson reviewed the English cases, including *Pearly* v. *Smith,* and *Sherrard* v. *Sherrard,* and had this to say:

''The reasoning of the English cases goes upon the ground that the interest does not accrue day by day, which is entirely true of their consols. In *Pearly* v. *Smith, supra,* Lord Hardwicke stated it as tersely as it can be put, when he says: 'If the security had continued a mortgage, the claimant would have been entitled to the demand he now makes, because there interest accrued every day for forbearance of the principal, though notwithstanding it is usual in mortgages to make it payable yearly.' The same distinction between mortgages and funded debt is recognized in *Sherrard* v. *Sherrard, supra,* and many other English cases. And it is an obvious distinction as applied to South Sea annuities, and British consols generally. But the distinction between a mortgage, and bonds of the City of Pittsburgh, and the bonds of The Philadelphia & Reading Coal & Iron Company secured by a mortgage, is difficult to see. In either case it is a loan, and the interest accrues from day to day as the consideration of the forbearance. That the principal is not due is not to the point, for money is loaned for a term of years upon mortgages as well as city or corporation bonds.''

In *Dexter* v. *Phillips,* it will be remembered, the early case of *Earp's Will* was cited with approval.

In *Wilson's Appeal,* however, it was pointed out that the court in Earp's case had failed to recognize ''the peculiar character of the English consols'', and, after a careful consideration, the court expressly overruled it.

*Wilson's Appeal* holds, in brief, that ''the interest on these municipal and corporation bonds does accrue *de die in diem* precisely as in the case of an ordinary bond and mortgage''. The court said that it was ''wholly unable to distinguish one from the other in principle''.

Earlier herein we set out the contention of the plaintiff that "upon coupons there is no such thing as an accrual, and only when the coupon becomes due is anything due. In other words, it [bond interest] does not accrue from day to day". In *Adams* v. *Adams,* (1885) 139 Mass. 449 [1 N. E. 746], the question was presented whether interest on bonds was apportionable under the Massachusetts statute, and in holding that it was the court had this to say with respect to bond interest: "The coupons are promises to pay certain sums of money at certain times expressly as interest on the bond. They differ from the ordinary promises to pay interest semiannually contained in promissory notes only in their capacity of being detached from the bond, and thus acquiring all the incidents of a distinct negotiable written promise." And again: "But coupons attached to bonds are absolutely due and certain to become payable at a fixed time; and although the amount payable, in the technical language of the law, cannot be said to accrue from day to day, as rent does not accrue from day to day, yet the proportionate part of the coupon, which at any time within the half-year covered by it is earned as interest on the principal sum of the bond, can be exactly computed, and its character as interest becoming due is not and cannot be changed by subsequent events, so long as the coupons remain attached to the bond, or are held by the same person who holds the bond and as a part of the same purchase or investment."

In the absence of authority in this state we are at liberty to follow either of the two authorities which have been discussed. We have no hesitation in following *Wilson's Appeal* rather than *Dexter* v. *Phillips.* As said in *Wilson's Appeal,* referring to the nonapportionment rule, "That this rule is inequitable, and to some extent arbitrary, may be assumed from the fact that modern legislation and judicial decision have steadily tended to narrow the rule and enlarge the exceptions." The reasons given by Justice Paxson appeal to us as sound and he shows in an unanswerable way why the rule of the English cases respecting interest on the public debt is not controlling and should not be followed as to interest on the bonds of private corporations. Just what justification there was for extending what is characterized by Justice Paxson in *Wilson's Appeal* as "a common-law rule

admittedly obnoxious to equity'' and applying it to interest on the bonds of private corporations does not appear from the Dexter case or from the comment or annotation found in Perry on Trusts and Trustees. Even in the Massachusetts case of *Adams* v. *Adams, supra,* the contention of the plaintiff with respect to interest is answered and, we think, what was said in the earlier Massachusetts case of *Dexter* v. *Phillips* respecting coupons was modified. Moreover, it cannot be said with any degree of certainty from the Dexter case what kind or type of bonds was involved, which renders it difficult, if not impossible, to say whether the bonds herein are comparable. *Wilson's Appeal,* on the other hand, deals with bonds of a private corporation such as those herein involved, as well as with municipal bonds.

But, over and above all that has been said, the weight of Mr. Perry's authority is on the side of a day-to-day accrual of interest on coupon bonds and, therefore, of apportionment. We are satisfied that, being the fairer and more equitable of the two rules, it should be followed.

Some of the securities in the trust in the case at bar are promissory notes and corporate stock. None of the income in question, however, is derived from the stock; and so it becomes unnecessary to discuss the rule with respect to ordinary dividends of corporate stock. There seems to be unanimity of opinion respecting such dividends; they are held to be not apportionable because "Profits of a business do not accrue at a steady rate from day to day, and are therefore incapable of apportionment" (Perry, 7th ed., 556*b*, and note).

Other cases than those herein discussed were cited in the briefs, but it is not necessary, in the view we take of the case, to discuss them. *Union Safe Deposit etc. Co.* v. *Dudley, supra,* contains no discussion of the subject, but simply follows and applies the rule announced in the Dexter case to the bond interest there involved. The only point presented on this appeal has, we think, been fully discussed.

For the reasons given herein we are satisfied that the judgment of the trial court was correct, and should be affirmed.

Conlan, J., and Johnson, P. J., concurred.