382

IN THE MATTER OF THE ESTATE
OF ALBERT D. SMITH, DECEASED.

FIDELITY UNION TRUST COMPANY, TRUSTEE, *ETC.*,
PLAINTIFF-RESPONDENT, v. THE HOUSE OF THE
GOOD SHEPHERD, DEFENDANT-APPELLANT, AND
JEFFREY A. RANDOLPH, ALICE P. RANDOLPH AND
ROBIN ROS HIGHLEY, MINORS, THROUGH THEIR
GUARDIAN *AD LITEM* ALFRED C. CLAPP, AND LOUISE
H. RANDOLPH, DEFENDANTS-RESPONDENTS AND
CROSS-APPELLANTS, AND PETER ROS AND TIMOTHY
H. ROS AND CRISTINA ROS, MINORS, THROUGH
THEIR GUARDIAN *AD LITEM* STEPHEN B. WILEY, DE-
FENDANTS-RESPONDENTS AND CROSS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 13, 1969—Decided February 4, 1969.

Before Judges GAULKIN, COLLESTER and LABRECQUE.

*Mr. Robert B. Kroner* argued the cause for appellant The House of the Good Shepherd (*Messrs. Holley & Kroner,* attorneys).

*Mr. Alfred C. Clapp* argued the cause for respondent Louise H. Randolph and *pro se* as guardian *ad litem* for respondents and cross-appellants Jeffrey A. Randolph, Alice P. Randolph and Robin Ros Highley, minors (*Messrs. Clapp & Eisenberg,* attorneys).

*Mr. Stephen B. Wiley* argued the cause *pro se* as guardian *ad litem* for respondents and cross-appellants Peter Ros, Timothy H. Ros and Cristina Ros, minors.

*Messrs. Riker, Danzig, Scherer & Brown* filed a statement in lieu of brief for respondent Fidelity Union Trust Company (*Mr. William C. Connelly,* of counsel).

The opinion of the court was delivered by

LABRECQUE, J. A. D. Appellant The House of the Good Shepherd appeals from a judgment of the Essex County Court directing that the income from two trust funds administered by plaintiff Fidelity Union Trust Co. be paid over to the children of Alice H. S. Randolph, deceased, a great granddaughter of the testator.

Decedent died on October 17, 1913, survived by his wife Nellie Gasper Smith, his daughter Mary Alice Smith Hallock (Freefield), and his granddaughters Louise St. John Hallock (Ros) and Mary Alice Hallock (Shackelton). His will, which was duly admitted to probate by the Surrogate of Essex County, provided, in pertinent part, as follows:

"FOURTEENTH: All the rest, residue and remainder of my estate, * * * I direct my executors to divide into two equal parts and of them I dispose as follows:

a. I give and bequeath one of such parts to Fidelity Trust Company of Newark, New Jersey, to have and to hold the same upon the following trusts, that is to say:

\* \* \* \* \* \* \* \*

(2) To pay over the net income thereof to my wife, Nellie Gasper Smith, during her life, and upon her decease, if my daughter, Mary Alice Smith Hallock, survive me to pay the said net income to her during her life and upon the decease of both my said wife and daughter, to pay the said net income in equal shares to my grandchildren, during the lives of my said granddaughters, Alice May Hallock and Louise St. John Hallock, and the survivor of them, the issue of each deceased grandchild to stand in the parent's place, and upon the decease of the survivor of my said two granddaughters to divide the principle [sic] with all accumulations of income in equal shares and pay over the same to all of my grandchildren, the issue of every deceased grandchild (including my said two granddaughters) to stand in the parent's place.

(3) If, however, at the decease of my said wife, my daughter and both my said two granddaughters, no lineal descendant of mine shall then survive, I direct the principal thereof with all accumulations of income to be distributed equally among the Orange Memorial Hospital, the House of the Good Shepherd, located in the City of Orange, New Jersey, the Orange Orphan Society, located in the City of East Orange and the Young Men's Christian Association of the Oranges.

b. I give and bequeath the other one-half of said residue to said Fidelity Trust Company to have and to hold the same upon the following trusts, viz:—

\* \* \* \* \* \* \* \*

(2) To pay the net income arising therefrom to my daughter, Mary Alice Smith Hallock, during the term of her natural life and upon her decease to pay the net income in equal shares to my grandchildren during the lives of both my said granddaughters, Alice May Hallock and Louise St. John Hallock, and the survivor of them, the issue of each deceased grandchild to stand in the parent's place, and upon the decease of the survivor of my said two granddaughters to divide and pay over the principal with all accumulations of income in equal shares to all of my grandchildren, the issue of every deceased grandchild (including my said two granddaughters) to stand in the parent's place.

(3) If, however, upon the decease of my said daughter and both my said two granddaughters, no lineal descendant of mind [sic] shall then survive, I direct the principal thereof with all accumulations of income to be distributed equally among the

Orange Memorial Hospital, the House of the Good Shepherd located in the City of Orange, New Jersey, the Orange Orphan Society, located in the City of East Orange, and the Young Men's Christian Association of the Oranges."

For purposes of convenience the trusts provided in paragraphs (a) and (b) will be hereafter referred to as Trusts A and B, respectively.

Mary Alice Smith Hallock Freefield, testator's daughter, died on December 31, 1945. One of her two children, Louise St. John Hallock Ros is living. Her only other child, Alice May Hallock Shackelton, died in 1915 leaving a daughter, Alice H. S. Randolph, whose death on January 23, 1967 precipitated the present controversy. Alice left surviving her three children, Louise H. Randolph, Jeffrey A. Randolph, and Alice P. Randolph. Testator's widow Nellie Gasper Smith died in 1956.

Louise St. John Hallock Ros adopted two children, Patricia L. R. Highley, who died in 1964 survived by Robin R. Highley, and Peter H. Ros, who is living and currently has three children, Peter S. Ros, Timothy H. Ros and Cristina Ros.

Prior to the death of Alice H. S. Randolph one-half of the income from Trusts A and B was being paid to her as the surviving child of her mother Alice May Hallock Shackelton, testator's granddaughter, and the remaining one-half to Louise St. John Hallock Ros, testator's granddaughter.

Plaintiff Fidelity Union Trust Company, as trustee under the two trusts, presented its second intermediate account and requested directions as to the distribution of the income from the trust estates which it had been previously paying to Mrs. Randolph. The County Court determined that it should be paid to her children Louise H. Randolph, Jeffrey A. Randolph and Alice R. Randolph. The concomitant judgment provided, in paragraph 18 thereof, that nothing therein contained should be construed as a determination as to the proper method of distributing the *corpus* of the two trusts upon their later termination.

The House of the Good Shepherd appeals from the award of the income to the children of Alice H. S. Randolph and they and the grandchildren of Louise St. John Hallock Ros cross-appeal as to paragraph 18 of the judgment.

Appellant The House of the Good Shepherd contends that the grandchildren of Alice May Hallock Shackelton, *i. e.,* the children of Alice H. S. Randolph, are not the "issue" of the former because the word "issue" is limited in its significance by the subsequent use of the words "parent's place" and refers only to the children of testator's granddaughters and not to their children's children, citing *Sibley v. Perry,* 7 *Ves.* 522, 32 *Eng. Rep.* 211 *(Ch.* 1802), and *Coyle v. Coyle,* 73 *N. J. Eq.* 528 *(Ch.* 1907). For this reason it urges that the income formerly paid to Alice H. S. Randolph should not be paid to her children but to Louise St. John Hallock Ros, and that upon her death the *corpus* should be paid to the charities named in the will (one of which is appellant).

Respondents urge that any ambiguity inherent in testator's use of the phrase in question in subparagraph (2) is cleared up and controlled by the unambiguous language of the gift over contained in subparagraph (3), which provides for its vesting when "no lineal descendant of mine shall then survive." They urge that "issue" as here used indicated a *per stirpes,* rather than *per capita,* distribution of income to descendants to the remotest degree.[1]

 Our primary function in construing a will is to ascertain and give effect to the intention of the testator. *In re Cook,* 44 *N. J.* 1, 6 (1965); *In re Conway,* 92 *N. J. Super.* 428, 434 *(App. Div.* 1966), remanded for modifica-

---

[1] *N. J. S.* 3A:3A-1 which provides that where provision is made for the benefit of issue and no contrary intention is expressed, such issue shall take *per stirpes,* is of no assistance since it affects only the wills of persons dying after its effective date, May 17, 1952. See *In re Moses,* 58 *N. J. Super.* 67 *(App. Div.* 1959), affirmed 32 *N. J.* 341 (1960).

tion 50 *N. J.* 525 (1967). In considering doubtful provisions in a will, an interpretation benefiting kindred is favored as against strangers. *Rosencrans v. Fry,* 12 *N. J.* 88, 95 (1953). Except in a plain case where the intent of a testator to disinherit is clear, the heirs at law of a testator will not be disinherited. *Creech v. McVaugh,* 140 *N. J. Eq.* 272, 279 (*Ch.* 1947).

In general, it is the duty of the court to reconcile, if possible, any apparent contradictions of the language of a will so as to invest it with a consistent and reasonable meaning and thereby give effect to the testamentary intention. *National State Bank of Newark v. Nadeau,* 57 *N. J. Super.* 53, 63 (*App. Div.* 1959).

The parties are in general agreement that at common law the use of the unqualified word "issue" in a will signified progeny to the remotest degree. *Plainfield Trust Co. v. Hagedorn,* 28 *N. J.* 483, 488 (1958); *Pierson v. Jones,* 108 *N. J. Eq.* 453, 455 (*Ch.* 1931), affirmed 111 *N. J. Eq.* 357 (*E. & A.* 1932). Here, however, appellant calls for application of the rule, first enunciated by Lord Eldon in *Sibley v. Perry, supra,* that when the word "issue" is used in collocation with the word "parent" it carries a restricted meaning and is limited to children of the parent named. The rule was applied in this State in *Coyle v. Coyle, supra,* where a will which provided that "if any of my said children shall have died, leaving lawful issue, such issue shall take the share their parent would have taken if living," was held to include only the testator's grandchildren. See also *Skinner v. Boyd,* 98 *N. J. Eq.* 55 (*Ch.* 1925), affirmed 100 *N. J. Eq.* 355 (*E. & A.* 1926); *Hopkins v. Dimock,* 138 *N. J. Eq.* 434, 439 (*Ch.* 1946), affirmed 140 *N. J. Eq.* 182 (*E. & A.* 1947).

Respondents urge that the cited rule is not an inflexible one and that from other portions of the will it is clear that the words "the issue of each deceased grandchild to stand in the parent's place" have reference to the issue of each grandchild to the remotest degree. We agree.

Nine years after *Coyle v. Coyle, supra,* our highest court approved the following statement by Vice-Chancellor Howell in *Dennis v. Dennis,* 86 *N. J. Eq.* 423 (*E. & A.* 1916):

"It may be said that the case of *Sibley v. Perry* has been much criticised (*Coyle v. Coyle, supra*), but it has been followed with very little, if any, diminution of its force as a precedent. In *Maynard v. Wright,* 26 *Bev.* 285, Sir John Romilly, M. R., says: 'It is clear that the word "issue" is *nomen generalissimum,* and that it includes the latest descendants unless its meaning be restricted and cut down by words to be found in the will. On the other hand, it is also clear that where issue are substituted for parent, the word "issue," is restricted to the children of the parent spoken of. *But this rule of construction may again be controlled by the general nature and scope of the whole will and by the use of the word "issue" in other parts of the will which may enlarge this construction and restore the word to its original comprehensive meaning.'*" (at *p.* 428; emphasis added.)

In *Pierson v. Jones, supra,* Vice-Chancellor Berry reiterated the exception cited above but applied the *Sibley* rule in the absence of language in other parts of the will which would call for a different construction.

The exception to the *Sibley* rule referred to in *Maynard v. Wright* had been applied in *Ross v. Ross,* 20 *Beav.* 645, 52 *Eng. Rep.* 753 (*Rolls Ct.* 1855). In that case the testator had given a fund to his niece for life and after her death to her children and the issue then living of children then dead, *the issue to take the "share which their parent would have been entitled* to, if he or she had survived" the niece, with gifts on similar terms to other nieces and their issue, and a provision that it should become part of the residue "in case all my said nieces shall depart this life *without leaving a child or issue of a child* living at their respective deaths." There the Master of the Rolls, Sir John Romilly, held that, standing alone, the latter clause was:

"* * * so unambiguous, that I should be violating the ordinary and obvious meaning which is put upon the word 'issue,' where there is no expression used which could, in the slightest degree, control it, if I did not give it its full effect upon the present occasion. If it

bears this meaning in this clause of the will, why is it not to bear the same meaning in the clause which I have already read? * * *" (20 *Beav.*, at p. 652, 52 *Eng. Rep.*, at p. 756)

He thereupon construed the word "issue," as used in conjunction with the phrase the "share which their parent would have been entitled to," to coincide with the gift over, holding that it was not confined to the children of the niece but could refer to a grandchild of the niece as well.

*Ross v. Ross* was followed in *Ralph v. Carrick, L. R.* 11 *Ch. D.* 873 (*Ct. App.* 1879), where the court, reversing the Chancery Division, held that use of the unambiguous word "descendants" in the gift over controlled an ambiguous clause in the original gift. In that case the testator gave a fund to his wife for life and then to the children of his aunt "the descendants (if any) of those who may have died being entitled to the benefit which their deceased parent would have received had he or she been then alive," with gifts to other aunts and their descendants; and providing that the portions should fall into the residue "should there be no children or lawful descendants of any of my aunts above named remaining at the time these bequests shall become payable." Referring to *Ross v. Ross*, Brett, L. J., noted:

"It is an authority for holding that where the word 'issue' is used in its more extended meaning in the gift over, that more extended meaning is to be carried back to the former part of the will, though the word is there in collocation with parents, and that the case is thus taken out of the operation of the rule in *Sibley v. Perry*." (11 *Ch. D.*, at p. 885)

Cotton, L. J., held that "descendants" as used in the gift over was used in its ordinary unrestricted sense and observed:

"I think it is a sound principle that when there are ambiguous words in the original gift you should not construe the gift over in a restrictive sense which it does not otherwise bear, but should construe the ambiguous words contained in the previous gift so as to agree with the unambiguous words contained in the gift over." (at p. 888)

James, L. J., opined that the result would have been the same had the word "issue" been used in place of "descendants," (at *p.* 883). Both *Ross* and *Ralph* were abstracted and cited in 2 *Jarman on Wills* (6*th Amer. ed.* 1893), 109, as supporting the proposition that "if in such a case there follows a gift over on a general failure of 'issue' of the original legatee, this [*Sibley*] construction is excluded."

Here, to construe "issue" as meaning children in subparagraph (2) and descendants in subparagraph (3), would leave a *hiatus* between the termination of the trust, conditioned upon default of children of grandchildren of the testator, and the taking effect of the gift over, conditioned upon the default of issue of the testator. Alternatively, should subparagraph (3) be construed to refer only to testator's lineal descendants who are children of his granddaughters, the gifts over to charity would become effective to the exclusion of other direct descendants of the testator (the grandchildren of his granddaughters) — a result not favored by the law unless clearly compelled by the words of the will. *Creech v. McVaugh, supra,* 140 *N. J. Eq.,* at *p.* 279; 95 *C. J. S. Wills* § 616, *p.* 840 (1957)

[5] In line with our obligation to reconcile, if possible, the two paragraphs, we incline to the view that the unambiguous phrase "no lineal descendants of mine" in subparagraph (3) clearly means that the gifts over were not to become effective until there was a failure of testator's issue to the remotest degree. Since this is an integral part of testator's complete plan in connection with Trusts A and B, we are likewise of the opinion that the word "issue" used in subparagraph (2) should be construed to include descendants to the remotest degree. The direction that "the issue * * * stand in the parents place" evidences testator's intention that the distribution of income should be *per stirpes.* See *Restatement, Property,* § 292, *p.* 1550, *comment* (f); *In Matter of Farmers Loan & Trust Co.,* 213 *N. Y.* 168, 107 *N. E.* 340, 342–343, 2 *A. L. R.* 910 (*Ct. App.* 1914).

The language used in other parts of the will supports this construction. In earlier clauses the testator demonstrated his awareness of the difference between "children" and "issue" and made use of the latter in terms of "descendants." In paragraphs (b) and (c) of article Sixth of the will he provided that if a granddaughter should die leaving issue surviving, such issue should "stand in her place" in the distribution of principal. In paragraphs (e) and (f) of article Eighth he provided a gift to take effect upon the death of his wife and daughter, "to her [his daughter's] children (my grandchildren), share and share alike, the issue of any deceased child to take the parent's place," with various gifts over "[s]hould my said daughter, her children and their issue predecease my said wife so that there shall be left no lawful lineal descendant of my blood." In paragraph (d) of the Ninth article he used the word "children" when he plainly intended that only immediate offspring should share; and in article Tenth, paragraph (e) he provided that the *corpus* of a $475,000 trust should be payable to certain charities there named "if * * * no grandchild of mine or issue of any then survive." Such use of words lends color to testator's use of similar or related words in article Fourteenth. 5 *American Law of Property* (*A. J. Casner ed.* 1952), § 22.36; *cf. Dulfon v. Keasbey,* 111 *N. J. Eq.* 223, 228 (*Ch.* 1932); *Fidelity-Philadelphia Trust Co. v. Jameson,* 137 *N. J. Eq.* 385, 390 (*Ch.* 1946).

We note in passing that it is not at all clear that in 1911, when the will was executed, the scrivener was aware of the possible impact of *Sibley.* While it had been followed — not without some hesitation — by Vice-Chancellor Leaming in *Coyle v. Coyle* in 1907, it was not until five years after the will was drawn and three years after testator's death that it received the *imprimatur* of our highest court in *Dennis v. Dennis.*

By reason of the foregoing we find it unnecessary to pass upon respondents' contention that the *Sibley* rule should be overruled altogether. It has been much criticized. *Dennis v.*

*Dennis, supra,* 86 *N. J. Eq.,* at *p.* 428. In *Ralph v. Carrick, supra,* 11 *Ch. D.,* at *p.* 884, Lord Justice Brett observed, "I should have no objection to be present at the funeral of *Sibley v. Perry."* See also *Coyle v. Coyle, supra,* 73 *N. J. Eq. pp.* 530–531; *In Matter of Farmers Loan & Trust Co., supra,* 107 *N. E.,* at *pp.* 342–343; *Dixon v. Pendleton,* 90 *S. C.* 8, 72 *S. E.* 501, 2 *A. L. R.* 915 *(Sup. Ct.* 1911) ; *Union Safe Deposit and Trust Co. v. Dudley,* 104 *Me.* 297, 72 *A.* 166 *(Sup. Jud. Ct.* 1908) ; *In re Hippel, Hippel v. Hewitt,* 2 *All. E. R.* 476, 479 *(Ct. App.* 1945) ; 3 *Powell on Real Property,* § 360 (1967) ; 5 *American Law of Property (A. J. Casner ed.* 1952), § 22.36. However, since it was approved in *Dennis v. Dennis, supra,* and has been applied with little, if any, modification since that time, we incline to the view that any decision as to its continued effectiveness should emanate from our present highest court. *In re Hartung,* 52 *N. J. Super.* 508, 511 *(App. Div.* 1958).

■ Turning to the cross-appeals seeking the deletion of paragraph 18 from the judgment, we are satisfied and hold that since the question whether the present decision as to the distribution of income was to have a determinative effect in any subsequent action over the distribution of *corpus* was neither raised nor argued below, and since, in construing the provisions of the trust dealing with income, recourse has been had to the provisions dealing with *corpus,* no future court, when called upon to interpret identical language as to *corpus,* should be barred from considering the *res judicata* effect of the present judgment. The issue of whether the adopted children of Louise St. John Hallock Ros or their descendants are eligible to participate in the distribution of *corpus* was avoided by the trial court as premature, and, of course, we express no opinion thereon. Its reservation for future consideration does not depend upon the presence of paragraph 18.

The judgment of the County Court is accordingly modified to strike therefrom paragraph 18 and, as modified, is affirmed.