MARIA SIMPSON, and others, appellants from a decree of
JUDGE OF PROBATE,

*vs.*

I. C. WELCOME, and another, executors.

Lincoln.    Opinion July 30, 1881.

*Will.    Trust.    Charity.    "Religious."*

A testator inserted an item in his will in these words :    "I hereby give, devise and bequeath in trust to I. C. Welcome, of Yarmouth, and Franklin L. Carney, of Newcastle, all that may remain both of my real and personal

estate, . . . and further direct the said Welcome and Carney to expend all that remain, . . . in the purchase and distribution of such religious books or reading as they shall deem best, and as fast as the funds shall come into their hands;"

*Held*, That this legacy must be considered legally as intended for a public charity; that the trust is clear and the objects sufficiently certain and definite to be carried into effect, according to established principles of law and equity, governing donations to charitable uses.

The word "religious," when used in a will made in this country, as descriptive of books and reading, means those books or reading, which tend to promote the religion taught by the Christian dispensation, unless the meaning is so limited by associate words or circumstances as to show that the testator had reference to some other mode of worship.

ON REPORT.

Appeal from a decree of judge of probate made to obtain a construction of the fourth item of the will of Ralph Harley, deceased, which is stated sufficiently in the opinion.

It was "agreed that the court shall have the power of determining the construction of the will, and whether the funds in the hands of the respondents shall be disposed of as is provided in article four of the will, or whether the heirs at law are entitled to it."

The following was the decree of the probate court:

(Decree.)

"Lincoln, ss. Probate court, February term, A. D. 1880. Ordered and decreed: That the sum of eleven hundred and twenty-five and $\frac{47}{100}$ dollars, balance due from the said I. C. Welcome and F. L. Carney, as executors of the last will of Ralph Harley, the said deceased, as appears by above statement of account by them made and allowed, be distributed to them as trustees under the provisions of said will. They giving bond in the sum of twenty-three hundred dollars, for the faithful discharge of the trusts named therein, and that they close their account as executors of the estate of said deceased, and charge themselves with said amount in a new account as said trustees.

ALMORE KENNEDY, Judge."

*A. P. Gould*, for the appellants.

The gift of the remainder in this will is too vague, indefinite and uncertain to be sustained.

It is not declared to whom nor where the distribution of the books is to be made, in what country or part of the world, to what race, nation or people. They are to be "religious books." But it is not declared to what religion they shall relate. In the discretion or will of the trustees may mean pagan, mahomedan buddhistic or christian; and if christian, roman or protestant.

The gift is not for charitable uses. It is not declared to be a charity. The will does not indicate that the books are to be distributed among the poor.

The stat. of charitable uses (43 Eliz. c. 4), does not embrace the objects of this gift. The devise is therefore not aided by it, and it must stand or fall as at common law, without the aid of that statute.

Either there must be some words in a gift declaring it to be for a charitable purpose, or the purpose declared must in its very nature be a charity.

The reported cases on this subject are innumerable, and many of them hard to reconcile, but I am able to find none which declare a gift in such words as those in this will to be for a charitable use. See *Dole* v. *Lincoln*, 31 Maine, 422; *Brown* v. *Yeall*, 7 Ves. Jr. 51; *James* v. *Allen*, 3 Merivale, 17; *Ellis* v. *Selby*, 7 Simons, 352; *Williams* v. *Kershaw*, 1 Keene, 232; *Morice* v. *Bishop of Durham*, 9 Ves. Jr. 399; 10 Ves. Jr. 521; Redfield on Wills, Part II, 778, 779, 780, 782; *Attorney General* v. *Haberdasher's Co.* 1 Mylne and Keene, 428; *Ommauney* v. *Butcher*, Turner and Russell, 260; *Heiss* v. *Murphy*, 40 Wis. 276; *Nash* v. *Morley*, 5 Beav. 182; Redfield Wills, Part I, 697, *et seq*.

"Religion" is defined by Worcester "as any system of faith and worship." It would be impossible for a court to decide to what religion or religious books this fund should be devoted without further indication in the will itself.

*Byron D. Verrill*, for the executors, cited: *Going* v. *Emery*, 16 Pick. 107; *Drew* v. *Wakefield*, 54 Maine, 291; *Jackson* v. *Phillips*, 14 Allen, 539; *Everett* v. *Carr*, 59 Maine, 325; *Saltonstall* v. *Sanders*, 11 Allen, 446; *Attorney General* v. *Stepney*, 10 Ves. 22.

DANFORTH, J. The question involved in this case is the construction of the fourth item in the will of the late Ralph Harley, or the validity of the gift contained therein. The item so far as material is as follows : "I hereby give, devise and bequeath in trust to I. C. Welcome, of Yarmouth, and Franklin L. Carney,. of Newcastle, all that may remain both of my real and personal estate, . . . and further direct the said Welcome and Carney to expend all that may remain . . in the purchase and distribution of such religious books or reading as they shall deem best,. and as fast as the funds shall come into their hands."

The objection made is that the direction as to the appropriation. of the fund is too vague and indefinite to be sustained.

The meaning of the testator is not obscure or open to doubt. That the fund is given in trust, that the whole of it is to be expended in religious books or reading, that all the books or reading so purchased are to be distributed, and that the class of persons to whom distribution is to be made is limited only by the discretion of the trustees, are all so clearly within the meaning of the testator as expressed in his will, as not to admit of doubt. But it is claimed that vagueness and uncertainty attaches both to the character of the books to be distributed and the persons or class who are the beneficiaries under the gift.

The word "religious" is the only expression descriptive of the character of the books to be bought and distributed, and describes. such as teach or inculcate religion. It is true that religion in its broadest sense may include all the different systems of faith and worship, which can be found in the world. In this sense it may be conceded that the trust is one which neither law nor equity would sustain. In the great variety of religions prevailing, and so great the conflict between them, if all were to be included, the intention of the testator could not be executed, if one, or more,. his intention could not be ascertained. But happily we are not reduced to this dilemma. Words used in a will, as in other instruments, are construed in connection with the words in whose company they are found, as well as in the light of the circumstances in, and under which, they are used.

In this case the testator had his domicile, and made his will in a country where, though there is no religion established by law,

there is one general system which is universally recognized as embodying the true faith, and whatever difference there may be in the detail, as to belief or form of worship, all the different denominations are equally entitled to the protection of, and are equally recognized by the law. Under these circumstances when religious books or reading are spoken of, those which tend to promote the religion taught by the christian dispensation, must be considered as referred to, unless the meaning is so limited by associate words or circumstances as to show that the speaker. or writer had reference to some other mode of worship. There is no such limitation in this case. Whether this testator, or his trustees were or are believers in any form of religion which may, *ex cathedra*, be pronounced superstitious, or erroneous, does not appear. Nor can we assume such to be the fact from the absence of any evidence upon that point. The inference is the other way and we must conclude that the meaning to be attached to the word " religious" as used in the will, is the same as that which is usually given to it in the community under like circumstances. If susceptible of two or more meanings, the better, that which is more consonant with the policy of the law and productive of the welfare of society, is to be taken rather than the other.

It is true that no beneficiaries are specifically named. If this is a public charity it is not necessary that any should be. The persons to be reached are left to the discretion of the trustees, and are otherwise unlimited in numbers or class. The object to be accomplished may be considered the general welfare of the community, or, if circumstances permit even that of mankind. In either view it may be sustained, as in the case of the gift for the Smithsonian Institution, at Washington "for the increase of knowledge among men," approved by the courts of England, and in *Whicker* v. *Hume*, 14 Beavan, 509 ; S. C. 7 H. L. C. 124, in which the trustees were to apply the fund given in "their absolute and uncontrolled discretion, for the benefit and advancement, and propogation of education and learning in every part of the world, so far as circumstances will permit." This case is in the principles involved, similar to and decisive of the one at bar. It is not material that the names or number of persons to be benefitted should be given if the purpose to be accomplished is made certain.

The very idea of a public charity is that the benefit is to be generally bestowed. *Going* v. *Emery*, 16 Pick. 107.

That this legacy must be considered legally as intended for a public charity would seem to be well settled by the authorities in England and in this country. True it is not so named in the will, nor does it come within the terms of the stat. 43 Eliz. c. 4, which is descriptive of public charities, and has been adopted as part of the common law here. *Going* v. *Emery, supra.* It is sufficient if the terms used bring it within the description of a charity, and within the spirit of the statute referred to. 2 Story Eq. Jur. § § 1155–1164. Lord CAMDEN in *Jones* v. *Williams*, Amb. 651, defines a charity as "a gift to a general public use, which extends to the poor as well as the rich." After a full review of the authorities, GRAY, J. in *Jackson* v. *Phillips*, 14 Allen, 556, defines a charity, in the legal sense, "as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion," &c. These definitions so far as we have been able to ascertain, are fully sustained by the cases, and fully cover the legacy in this case. See also, 2 Redfield on Wills, § 71, and cases cited; *Drew* v. *Wakefield*, 54 Maine, 291; *Everett* v. *Carr*, 59 Maine, 325; *Bartlet* v. *King*, 12 Mass. 537.

In view of these authorities we may well adopt the language of SHAW, C. J. in *Going* v. *Emery*, 16 Pick. on page 119, as particularly applicable to this case. "The donees are particularly designated, the trust is clear, the general objects sufficiently indicated to bind the consciences of the trustees, and to render them liable in equity to account for the execution of this trust, by a suit to be instituted in the name of the attorney general, representing the public; and that these objects are sufficiently certain and definite, to be carried into effect, according to the established principles of law and equity, governing donations to charitable uses."

*Decree of probate court affirmed.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and SYMONDS, JJ., concurred.