## Powell Estate

Before Sinkler, P. J., Klein, Bolger, Ladner, Hunter and Boland, JJ.

54

58

*Frank F. Truscott*, city solicitor, and *Joseph P. Gaffney, Jr.*, assistant city solicitor, for exceptants.

*William J. Fuchs, David F. Maxwell* and *Edmonds, Obermayer & Rebmann*, contra.

HUNTER, J., June 2, 1950.—Testator by the twelfth item of his will and fourth codicil gave to the City of Philadelphia the sum of $100,000 to be known as the "Edward Powell Fund", in trust to pay the income at the expiration of each period of four years to any "citizen of the City of Philadelphia", in the judgment of a committee, who shall have "by his or her individual efforts and personal application to the Manufacturing and Commercial interests of the City of Philadelphia in the previous four years, succeeded in producing the best results for the benefit and prosperity of the City of Philadelphia in that line".

A committee appointed by the mayor having announced its intention of limiting consideration of candidates for the award to persons residing and voting within the geographical limits of the City of Philadelphia, testator's widow and three of his children, to-

gether with the executors and trustees under the will, having a contingent interest in the fund, filed a petition for a declaratory judgment construing the testamentary provisions; in which they contend that testator did not intend to limit the recipients to residents of the City.

The hearing judge, Klein, J., concluded that the award is not restricted to a resident of the City of Philadelphia. He found:

"That the recipient may be any citizen of the United States, whose principal work or occupation is carried on within the City of Philadelphia and who is closely and intimately associated with the community life of the city. The recipient must reside either in the City of Philadelphia or in one of the smaller communities which form part of the Metropolitan Philadelphia area. In short, he must be a person who lives in Philadelphia, or its metropolitan area, who is so closely identified with the manufacturing and commercial interests of the city as to be generally regarded by the residents of our community as a Philadelphian."

The City of Philadelphia has filed exceptions, and contends that the term "Citizen of Philadelphia" comprehends only those persons living within the corporate limits of the city and exercising political rights therein. Further, that it is a term of clear, definite and well-understood meaning, which cannot be explained by the admission of parol evidence.

The hearing judge was of the opinion that the word "citizen" is not a word of clear and precise definition, being dependent upon the context in which it is found, and that as used by this testator an ambiguity exists and parol evidence of surrounding circumstances is admissible to assist the court in ascertaining testator's intention.

The word "citizen" has many shades of meaning, as appears by the host of authorities cited by the

hearing judge, after wide research, and is not necessarily synonymous with "inhabitant" or "resident".

Referring to the use of words in a will, Mr. Justice Stern in Funk Estate, 353 Pa. 321 (325), quoting in part from Hogg's Estate, 329 Pa. 163, said:

" 'The test is what his (the testator's) words meant to *him* and the thought which *he* intended to convey by them; language being but a medium of expression, the object of interpretation is to ascertain its import as used by the one who employs it.' Not even the most learned and erudite invariably use words with the precise meanings attributed to them by lexicographers; testators, like other persons, frequently create their own dictionaries, and indeed it is largely from that circumstance that there arise the necessity and the art of judicial interpretation."

This testator in the codicil refers to "a prominent citizen of the City" whose gift setting up the "Philadelphia Award" had anticipated part of testator's purpose. This "citizen" was identified by the testimony as Edward W. Bok, prominent in the business and cultural life of the city, but who resided in the adjoining County of Montgomery.

In this same codicil testator recites that he himself is "of the City of Philadelphia, Manufacturer", whereas at the date of the codicil, and for a period of three years, he resided in Montgomery County, having sold his home in Philadelphia.

Also, in the opening paragraph of item 12 of the will, where he states his motive in making the bequest, he speaks of the "blessings and privileges of American Citizenship", and the pride of saying "I am a citizen of no mean country".

The hearing judge was correct in admitting parol evidence. No attempt was made to alter or contradict the will by declarations of testator. The evidence merely identified Edward W. Bok as the "citizen of

the City" mentioned in the codicil, and proved that testator knew of Mr. Bok's nonresidence. Also, that testator himself was not a resident of the city at the date of the codicil. It is essential in the interpretation of a will that you place yourself in testator's armchair and consider the facts and circumstances by which he was surrounded, his relation to the beneficiaries, their condition or necessities: McGlathery's Estate, 311 Pa. 351; Prime's Petition, 335 Pa. 218.

It is evident that the primary purpose of testator was, to use his words, the "improvement and prosperity of the City" by the application of the income "exclusively to the manufacturing and commercial interests", and not necessarily to reward or benefit a resident of the City. Thousands of residents of nearby communities are entitled to be called Philadelphians by reason of their interests within the city and their devotion to its welfare and prosperity. Many are identified as outstanding Philadelphians, acknowledged for their leadership in public affairs, and undoubtedly this was testator's conception of citizenship as mentioned in the will and codicil.

The hearing judge, in a clear and comprehensive opinion, supported by numerous authorities, has made a proper interpretation of testator's will, and we agree with his findings and conclusions.

The second question raised by the exceptions is whether an award may be made at this time, because of the city's delay in appointing a committee to select the first recipient of the award.

The will provides that the award shall be made at the expiration of four years from the date the fund shall come into the hands of the trustee, and every four years thereafter, and that "in no case shall the date or time of making the awards be changed". It is further provided that if a recipient cannot be found,

such part of the income which cannot be awarded shall be added to and become a part of the principal sum.

The fund was received by the city on January 10, 1943, and a committee should have been appointed early in 1947. It was not appointed until May 22, 1948, a delay of approximately 16 months, and no award had been made up to December 24, 1948, when this petition for declaratory judgment was filed.

A second four-year period will expire in January 1951 next.

While, as stated by the hearing judge, a reasonable time must be allowed for the appointment and deliberation of the committee and arrangements for the presentation of the award, a 16 months' delay is not a reasonable compliance with testator's wishes. By reason of the specific instructions of the will, no award can be made until 1951, and the income of the first four-year period must be added to principal.

We are in complete agreement with the hearing judge on this point, and find no merit in the exceptions taken thereto.

The exceptions are dismissed, and the opinion of the hearing judge is confirmed absolutely.