WILLIAM M. GRIGSON, HENRY P. JOHNSON AND
ALBERT J. STEARNS, TRUSTEES UNDER THE WILL OF
MINNE S. STEPHENS
*vs.*
FRANK F. HARDING, ATTORNEY GENERAL OF THE
STATE OF MAINE
MILAN ROBERT BENNETT, EVA HILL, LESLIE M. BARROWS
AND STEPHENS MEMORIAL HOSPITAL ASSOCIATION

Oxford.    Opinion, September 17, 1958.

*Hutchinson, Pierce, Atwood & Allen,* for plaintiff.

*R. T. Smith* (for Milan Bennett),
*Linnell & Choate* (for Eva Hill),
*Robert T. Smith* (for Stephens' Memorial Library),
*Frank Linnell* (for Leslie Barrows),
*Ralph Farris* (for Frank F. Harding, Atty. Gen.),
for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. BELIVEAU, J., sat during argument but retired prior to the opinion.

WEBBER, J.   On report.   Plaintiff trustees bring this bill in equity seeking instructions and an interpretation of the will of the late Minne S. Stephens. It must be said at the outset that the will, although dispositive of a substantial estate, is so ineptly and inexpertly drawn and is couched in language so confusing and obscure that it tends effectively to conceal rather than to reveal what may have been the wish and intent of the testatrix.

After making certain specific bequests unrelated to any issues presented here, the testatrix undertook to dispose of the residuum in the sixth clause of the will, the pertinent portions of which read as follows:

"Sixth: All the rest and residue of the estate of which I shall die possessed or seized, whether real, personal or mixed, of whatever nature or wherever found, I give, devise and bequeath to the trustees hereinafter named, with full authority to convey and give good title to the same, but in trust for the following purposes only:

In the event that I predecease my mother, it is my expectation that she will continue to live at the Laboratory, if it has not been sold, as we have lived, and I direct that my trustees hereinafter named use the income from my entire estate for

the care and upkeep of the Laboratory, as I have been doing, and for the care and support of my mother so long as she shall live. It is my request that she confer with my trustees in regard to the investment of her property and use of the income therefrom to be used, together with my income, for her support and the upkeep of the Laboratory. So long as he is willing to continue in the same way and in doing the same work at the Laboratory, and at the same wage, I direct that Milan Robert Bennett shall continue as caretaker and perform in general the same work that he has been performing. I direct that the Laboratory shall not be sold while my mother is living. * * * I direct that the income from all of my property other than the Laboratory, if the same has not been sold, shall be used for the care and upkeep of the same until such time as the Laboratory can be disposed of by my trustees in such manner and for such purpose as my trustees believe would nearly as possible fulfill the wishes and desires I have verbally expressed to them as to its ultimate disposition. It would be my wish that the library, the furniture and furnishings remain in the Laboratory when finally disposed of, provided the use of the Laboratory will be such that the books and furniture can be advantageously left there, and any not so desirable should be sold. After the disposition of the Laboratory by my trustees, I direct that my other estate shall be turned over to the trustees, organization or persons having the care of the Laboratory, and the income used to aid in its upkeep and maintenance. In addition to the verbal instructions I have given to my trustees and the expression of my desires, I would suggest as a possible use to which the Laboratory could be put, if it had not been sold, would be for a hospital or a community house for the use of the inhabitants of Norway and vicinity. It may well be that some other similar use will be discovered by my trustees, and it is to allow them to use their discretion that I am leaving the property to them. I direct that my trustees shall make no disposition of the Labora-

tory except to such organization, corporation or association as will accept a conveyance of the same, subject to the agreement that so long as he shall desire said Milan Robert Bennett shall be retained as caretaker of the Laboratory building and grounds at a salary of one thousand dollars annually, and at such time as he retires voluntarily, I direct that as a first charge upon said income, he shall be paid annually the sum of three hundred and sixty-five dollars, payable in equal monthly installments so long as he shall live."

Later by codicil the testatrix made this further provision:

"Item 2. When the real estate known as the Laboratory is finally disposed of by my trustees in accordance with my verbal wishes to them and as set forth in said will, I direct that they shall see to it that proper steps are taken so that it shall be known as the 'C. A. and M. S. Stephens Memorial.' "

The testatrix was survived by her mother who is now deceased. The residuum of the mother's estate was by testamentary provision made to follow the will of the daughter so that no problem arises by reason of the mother's survival.

The Laboratory was a very large, rambling wooden building which the trustees, after investigation, very reasonably concluded was unsuited to adaptation either to a modern public hospital or to a community house. The site is somewhat remote from the built-up section of Norway and is not served by either public water or sewer facilities. It appears that defendant Stephens Memorial Hospital Association has established a public charitable hospital in Norway which is in operation and which has received generous public support. After some negotiations, the details of which are not important here, the trustees sold the Laboratory and lot to a philanthropic citizen who in turn made a gift of the entire property to the defendant Hos-

pital. The Laboratory was thereafter torn down and demolished. It is now proposed in these proceedings that the entire residuum of the estate be given to the Stephens Memorial Hospital Association, either under a discretionary power alleged to be conferred upon the Trustees by the will, or under an application of the doctrine of cy pres. The Hospital has already memorialized the Stephens name and is prepared to provide for the defendant Bennett in accordance with the directions of the testatrix. The defendants who are heirs and next of kin of the testatrix oppose the suggested disposition and claim a resulting trust to themselves.

The proposed disposition to the Hospital can be justified, if at all, only by a demonstration that the will established trusts for charitable purposes. Our court in common with others has often employed language indicating a sympathetic interest in charitable bequests. "* * * it is liberal interpretation which must be employed in construing charitable trusts. They are favorites of the court in equity. This was the policy announced in the earlier cases * * * and that policy has been constantly and consistently maintained." *Prime* v. *Harmon,* 120 Me. 299, 303. It was never intended, however, that such expressions should be interpreted to mean that a benevolent spirit of the court would compensate for a lack of charitable intention on the part of testators. Bogert on Trusts and Trustees, Vol. 2A, Page 62, Chap. 19, Sec. 369 states the rule — "But, naturally, this friendly attitude cannot go so far as to create a charity out of a gift which lacks essential elements. The courts are not justified in making over wills and deeds and turning private gifts into charitable ones." Because charitable trusts are "favorites of the courts" and the "language should be liberally construed" does not mean that one party to litigation will be favored to the detriment of the other party, or that the court will adopt partisanship or antagonism in place of

even-handed justice. " 'There is no authority for holding a charitable tendency to be a charitable use; in other words, that a gift to a person for his own benefit, whereby consequential charity may arise, is not a charitable use.' " *In Re Kline's Est.* (1934) 138 Cal. App. 514, 32 P. (2nd) 677, 680; *Matter of Frasch's Will,* 245 N. Y. 174, 156 N. E. 656, 658; *In Re Hayward's Est.* (1947) 65 Ariz. 228, 178 P. (2nd) 547, 549. When it appears that a most worthy and deserving object of charity can be made the recipient of a testator's bounty only if the court is disposed to make a new will for him, the court is without power to act. "It is not the duty of the court to be 'curious and subtle' in devising schemes to aid testators in disinheriting their next of kin under circumstances like these." *Brooks* v. *Belfast,* 90 Me. 318, 332; *First Universalist Soc., Bath* v. *Swett, et al.,* 148 Me. 142, 151. "The heirs at law are not to be disinherited by conjecture, but only by express words, or necessary implication." *Howard* v. *The American Peace Society,* 49 Me. 288, 291. This then is the framework within which the court will act. It will construe the language of the testator liberally to permit his charitable intentions to shine through. It will not invent such an intention where none exists.

It has long been held in this and many other jurisdictions that a trust for charitable purposes will not fail merely because the selection of the particular charitable beneficiaries is entrusted to the discretion of the trustees. The will, however, must manifest the testator's intention to limit the choice to charitable objects. *Simpson* v. *Welcome,* 72 Me. 496; *Howard* v. *American Peace Society, supra; Everett* v. *Carr,* 59 Me. 325; *Fox* v. *Gibbs,* 86 Me. 87; *Prime* v. *Harmon, supra;* Page on Wills, Vol. 3, Page 588, Sec. 1232; *Peirce* v. *Atty. Gen.* (1920), 234 Mass. 389; 125 N. E. 609; *Thorp* v. *Lund,* 227 Mass. 474, 116 N. E. 946.

On the other hand when the discretion given to the trustees is so broad that it permits a selection among private

and noncharitable purposes, the trust will fail. Under such circumstances, a residuary estate would pass by way of a resulting trust to the heirs at law or next of kin. Scott on Trusts, Vol. II, Page 856, Sec. 123 furnishes several of the reasons underlying such a result. (a) Such a trust may violate the rule against perpetuities. (b) There is no one who can enforce it. (c) The testator's intended purpose is too indefinite and uncertain. (d) It is against public policy to permit the testator to delegate his testamentary power in this manner. For one or more of the foregoing reasons, the vast majority of American courts have rigidly adhered to the rule.

In *Buzzell* v. *Fogg*, 120 Me. 158, the estate passed to the trustee "to be disposed of as (the trustee) directs from time to time and as (the trustee) thinks will be in accordance with my wishes." The court held that there was a resulting trust for the heirs.

In *Haskell* v. *Staples*, 116 Me. 103, the provision was to the trustee "to be by him distributed and disposed of as he pleases." This trust failed "for uncertainty and indefiniteness."

In *Fitzsimmons* v. *Harmon*, 108 Me. 456, where the gift was to the trustee "to divide as seems to her best as I have told her my wishes in the matter," the trust failed and the estate passed by implication of law to the heirs.

"The discretion of the trustees must, in any event, be limited to a distribution for charitable purposes. If, in his discretion, it may include noncharitable purposes, the gift is not charitable." Page on Wills, *supra,* page 593. The beneficiaries of a private trust must be definitely ascertained at the time of the creation of the trust or definitely ascertainable within the period of the rule against perpetuities. "* * * it has been held in England and quite generally in the United States that where property is left in trust for

purposes which are not limited to charity, although they may be broad enough to include charity, the intended trust fails altogether." Scott on Trusts, Vol. IV, Page 2820, Sec. 398.2.

In *Green* v. *Allen et al.*, 132 Me. 256, an estate was left to four named persons "to be distributed by them in accordance with their wishes and desires. Inasmuch as (A — one of the four) is familiar with my wishes to a considerable extent, his suggestions may be helpful in the distribution." Because of uncertainty and indefiniteness, the property passed by resulting trust.

"The purposes for which such bequest can be used must be charitable only. If the intention of the testator was that the gift could be used for other than charitable uses, it is fatal to the validity of the bequest. If a part may be so otherwise used, all of it may be." *Bates* v. *Schillinger*, 128 Me. 14, 20.

"A trust which by its terms may be applied to objects which are not charitable in the legal sense, and to persons not defined, by name or by class, is too indefinite to be carried out." *Murdock* v. *Bridges*, 91 Me. 124, 133.

In *Olliffe* v. *Wells*, 130 Mass. 221, the gift was to the trustee "to distribute the same in such manner as in his discretion shall appear best calculated to carry out wishes which I have expressed to him or may express to him." Here again the trust failed for indefiniteness and uncertainty.

In *Smith* v. *Heyward*, 115 S. C. 145, 105 S. E. 275, provision was made for keeping up the homestead, house and garden where was located also the family tomb. The court pointed out that there was no charitable purpose because there was no public benefit. It was held that the trust must fail as being too vague and indefinite and as violative of the rule against perpetuities.

The recent case of *Goetz v. Old Nat. Bank of Martinsburg* (1954), 84 S. E. (2nd) (W. Va.) 759, clearly illustrates the necessity for the will to limit the discretion vested in trustees to charitable purposes only. Here the will disposed of property to the trustee "to distribute and pay over the same unto such religious, charitable, scientific, literary, educational, or fraternal corporations and associations as they may, in their discretion, select and determine, it being my request, however, that they shall select only such institutions as are located within the United States." The court recognized that the testatrix intended to create a charitable trust in part. "But the language used in attempting to do so," said the court at page 769, "is so general and indefinite that the executors and trustees may use part of the property in establishing a charitable trust. *Likewise, such trustees, under the wide and uncontrolled discretion accorded them, may create a private trust.* * * * Such mixed trust cannot be sustained." (Emphasis supplied) The court went on to demonstrate how such a "mixed trust" violates the rule against perpetuities and concluded that the residuary clause was not really the will of the testatrix but in the last analysis amounted only to a written direction to her executors to make a will for her. The property was held to pass by resulting trust to the next of kin.

Although it is not required that the testator use such explicit terms as "charitable" or "charitable purposes" in limiting the discretionary selection to be made by trustees, appropriate and equivalent language must be used to evidence such an intention. Where numerous purposes are listed commencing with the word "charitable," it has been held that a dominant and overriding charitable intention was thereby disclosed. *Gossett v. Swinney* (1931), 53 F. (2nd) 772. On the contrary some courts have been quite exacting in requiring that the language of the will foreclose any possibility that the trustee might be empowered to

select a private noncharitable purpose. *In Re Kline's Est.,* *supra,* illustrates this position. In that case the trustee was to disburse property "to such persons, charitable organizations and/or corporations situated in (Los Angeles), organized for the purpose of aiding and for the betterment of crippled children, the persons, charities or organizations that shall receive the benefit of this charitable trust to be selected by (the trustee) in its absolute and uncontrolled discretion." In spite of the reference to this as a "charitable trust," the court said the words "persons" and "corporations" were not modified by the word "charitable" as written, and the discretion was broad enough to permit the selection of noncharitable purposes. The court reasoned that the language was not ambiguous and was therefore not explained by reference to the words "charitable trust." We do not suggest that we would necessarily reach the same result upon the same testamentary language, but we cite the case as illustrating and vigorously supporting the rule that the will must clearly evince an intention to limit the discretion of trustees to a selection among charitable purposes only. This we conceive to be the law in Maine as in most other jurisdictions.

With these rules in mind, let us see what the testatrix said in the will now before us. Her first concern was for the use of the Laboratory during the life of her mother. By clear implication her trustees were directed to permit her mother to make her home there. They were further commanded to use the income from her "entire estate" first for the care and upkeep of the Laboratory and second for the care and support of her mother. Her next concern related to the use her mother might make of her own estate and was expressed in the form of a request that her mother should use at least a portion of her own income for the "upkeep of the Laboratory." This primary interest in the "care and upkeep of the Laboratory" extended then to the person

who had been her faithful caretaker and expressed itself in a direction for his continued employment as long as he should be willing and able to do the work. The next important provision was obviously intended to provide for the situation which would arise after the death of her mother and again her concern for the "care and upkeep of the Laboratory" was reemphasized by her use of the language: "I direct that the income from all of my property other than the Laboratory, if the same has not been sold, shall be used for the care and upkeep of the same until such time as the Laboratory can be disposed of by my trustees in such manner and for such purpose as my trustees believe would nearly as possible fulfill the wishes and desires I have verbally expressed to them as to its ultimate disposition." This was followed by a "wish" which may properly be interpreted as a direction to the trustees to retain certain personal property in the Laboratory if suited to its use, otherwise to sell the same. The testatrix then gave the *only* directive as to the ultimate disposition of the balance of her estate in these words: "After the disposition of the Laboratory by my trustees, I direct that my other estate shall be turned over to the trustees, organization or persons *having the care of the Laboratory*, and the income used to aid in *its upkeep and maintenance.*" (Emphasis supplied)

Up to this point it is entirely clear that the testatrix had not disclosed any interest in or concern for any charitable purpose whatever. Uppermost in her mind, quite obviously, was the mental picture of the beloved Laboratory as a continuing physical entity to be preserved, maintained, cared for and kept up with as little deviation from the established pattern of the past as possible. Four times she gave direction for the "care and upkeep," or "upkeep" or "upkeep and maintenance" of the Laboratory. When she reached the point of final disposition, her wishes became obscure and her intention veiled. That the estate is to follow the Laboratory is clear. But where within the four corners of the will

can it be ascertained to whom the trustees are empowered to transfer the Laboratory and estate? That the selected beneficiaries may be "persons" as well as other "trustees" or an "organization" is provided by the language of the will itself. The only distinguishing characteristic afforded by the testatrix as a means of identifying these "trustees, organization or persons" as the intended beneficiaries of the estate is that they are the ones "having the care of the Laboratory." As that obligation in turn rests upon their being selected by the trustees for that purpose, it is apparent that in reality the trustees were given an absolute discretion to choose beneficiaries, either for private or charitable purposes, and in effect to make a will for the testatrix. Such an attempted trust provision must fail under the well established rules of law already discussed.

The only question left to be resolved is whether or not the remaining provision of the will so limited the selection of the trustees to charitable purposes as to avoid the defects fatal to a trust for private purposes. The petitioners here necessarily rest their entire hopes upon such a construction of the language used. The testatrix employed the following phraseology: "In addition to the verbal instructions I have given to my trustees and the expression of my desires, I would *suggest* as a *possible* use to which the Laboratory *could* be put, if it had not been sold, would be for a hospital or a community house for the use of the inhabitants of Norway and vicinity. It may well be that some other similar use will be discovered by my trustees, and it is to allow them *to use their discretion* that I am leaving the property to them." (Emphasis supplied.) At the outset it must be noted that the testatrix used precatory words. She did no more than to suggest a "possible use" of the Laboratory whereas when she made her provision for its care and upkeep and for the support of her mother, in each instance she did not hesitate to "direct" the intended action.

Although words of suggestion and recommendation may, when read in context, be interpreted as directory and mandatory if such be the manifest intention of the testator, they will ordinarily be given their usual and accepted meaning. "The intention of the testator must be found from the whole will." *Clifford* v. *Stewart*, 95 Me. 38, 46. That the precatory words here used were fully intended to do no more than suggest or recommend, as they purported to do, seems fully substantiated by the contents of the will. Her repeated and consistent use of the word "direct" whenever she intended a positive disposition is in direct contrast to her use of the word "suggest" in this single instance. Moreover, she emphasized the broad discretion she had bestowed upon her trustees and indicated quite clearly that by suggesting a "possible use" for the Laboratory, she did not intend to limit or diminish the scope of that discretion or to tie the hands of her trustees. To construe these precatory words as imposing on the trustees a clearcut mandate to select only charitable purposes would be far fetched indeed.

The provisions of the will, thus interpreted, fall into the category illustrated by the Restatement of the Law of Trusts, *supra,* page 1291, Sec. 417 (b) : "1. A bequeaths $10,000 to B in trust to dispose of it to such objects of benevolence and liberality, charitable or otherwise, as B in his discretion shall most approve of. B holds the money upon a resulting trust for the next of kin of A * * *." The controlling rule of law is set forth by the Restatement at page 1200, Sec. 398, Comment on Subsection (1) in these words: "If property is transferred to a person upon an intended trust for indefinite or general purposes, which include *but are not limited to* charitable purposes, and there is no definite or definitely ascertainable beneficiary designated, the intended trust fails." (Emphasis supplied.) *In Re Peabody's Est.* (1937), 21 Cal. App. (2nd) 690; 70 P. (2nd) 249 at 250, the court said: "The will contains no limi-

tation on the power of selection by the trustee that would require him to select a charitable institution as beneficiary. * * * We cannot rewrite her will. We must construe it as she wrote it. The conclusion that the testatrix had in mind either a charitable institution or one organized for private profit would be based on conjecture and not on anything written in the will. In order to avoid intestacy, either partial or complete, we are not permitted to place on the will any construction not expressed in it and which is based on supposition as to the intention of the testatrix in the disposition of her estate." Cases decided upon the same principles of law are *Matter of Shattuck* (1908), 193 N. Y. 446, 86 N. E. 455; *Est. of Sutro* (1909), 155 Cal. 727, 102 P. 920; *Nichols* v. *Allen* (1881), 130 Mass. 211; *Wilcox* v. *Atty. Gen.* (1910), 207 Mass. 198. The applicable law inexorably compels us to declare a resulting trust to the next of kin.

Although the result reached for the reasons above stated effectively removes from this case the issue as to the application of the doctrine of cy pres, the matter has been so thoroughly briefed and vigorously argued that a brief comment on the applicable rules of law may not be amiss. Even if the trustees had been limited by the will to a selection among charitable uses for the Laboratory, it would by no means follow that a diversion of the estate to the defendant Stephens Memorial Hospital Association could have been permitted. There would still have been lacking in this case that *general* charitable intent which is essential to any application of cy pres. *Pierce* v. *How*, 153 Me. 180, 191. When the testator's charitable intent does not extend beyond a specific purpose or object and, as here, is narrowly and indissolubly linked to the family homestead, the doctrine of cy pres cannot be successfully invoked. Had we reached this issue, we would have found ourselves unable to distinguish the situation presented by the concentrated interest of this

testatrix in preserving and memorializing the Laboratory and that presented in the case of *Gilman* v. *Burnett,* 116 Me. 382. Language employed by the court at page 387 would have equal application here. "We search in vain in the will in the pending case for evidence of any general charitable intent on the part of the testatrix. The words in every portion preclude such an inference. * * * There is nothing to indicate that the testatrix intended to make any provision for the recipients of her bounty unless they could be provided for in her old home, the spot that she loved and thought so beautiful. Her charitable purpose was linked with the particular farm which constituted the subject of her bounty. The exact location provided for in the will was the paramount consideration in her thought, and a general provision for the beneficiaries would seem to be quite beyond her contemplation." So also in the will before us the testatrix disclosed a paramount intention to preserve and memorialize her beloved Laboratory in some suitable and appropriate manner. If her intention was charitable and extended beyond these narrow limits, she failed to use language which directly or by implication would serve to evidence that intention. Cf. *Shoemaker* v. *American Security & Trust Co.* (1947), 163 F (2nd) 585, in which the general charitable intent was dominant and the suggested site subordinate and incidental. See also *Belfast, In Eq.* v. *Goodwill Farm, et al.,* 150 Me. 17; *First Universalist Soc., Bath* v. *Swett, et al., supra; Edwards* v. *Packard,* 129 Me. 74. In *Bancroft* v. *Sanatorium Assn.,* 119 Me. 56 at 71, the court said, "Every paragraph of the declaration is consistent with the intent of a particular charitable gift and inconsistent with any general purpose to make this benefaction to the general cause of anti-tuberculosis. * * * It is difficult to conceive of a situation where the personal element in the gift stands out in a stronger light than it does here, and it is impossible to escape the conclusion that the cy pres doc-

trine has no application. To attempt to apply it would be to defeat rather than to further the donor's design."

Thus it may be seen that the trust fails in the first instance because the will attempted to confer upon trustees a discretion broad enough to permit them to put the Laboratory to private as well as charitable uses; but even if this obstacle had been avoided, the concentrated interest of the testatrix in the Laboratory as the place where her charitable purpose should be carried out would have effectively prevented the application of the doctrine of cy pres.

The testatrix made casual references to the possibility that the Laboratory might be sold either by herself or her trustees. She made no provision for disposition of her estate in event of this contingency. We can only construe the absence of such a provision as evincing a willingness on her part to have her residuary estate pass by intestacy in event no appropriate use could be found for the Laboratory. Her attempted disposition was predicated on the assumption that the Laboratory would be preserved as a family memorial and would be used.

It appears that the entire estate is now composed of personal property. As such, the assets pass to the personal representatives to be administered and distributed by them under the direction of the Probate Court as intestate property belonging to the estate. *First Universalist Soc., Bath* v. *Swett, et al., supra.* The justice who sat below having since retired, the entry will be

> *Remanded to the Supreme Judicial Court, in Equity for a decree in accordance with this opinion. Costs and reasonable counsel fees to be fixed by the sitting justice, paid by the personal representatives and charged in their probate account.*