Mason NEWICK, et al.

v.

John T. MASON, Jr., et al.

Supreme Judicial Court of Maine.

Argued May 30, 1990.
Decided Aug. 8, 1990.

Merton G. Henry (orally), Brian C. Shaw, Jensen, Baird, Gardner & Henry, Portland, for appellants.

Roger A. Putnam, Raymond A. Pelletier, Jr. (orally), Verrill & Dana, John C. Bannon, Susan B. Thomas, Murray, Plumb & Murray, Portland, Amy Homans, Asst. Atty. Gen., Augusta, for appellees.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Merton G. Henry, Guardian Ad Litem (Guardian) for the minor and unborn descendants of Hartley W. Mason, appeals a decision by the York County Probate Court (Brooks, J.) upholding the validity of two testamentary trusts created by Mason's will. The court determined that the trust created in Article 7 of the will is a valid charitable trust, and that the trust created in Article 9 of the will does not violate the Rule Against Perpetuities. Because the Probate Court's interpretation of the will does not constitute clear error, we affirm the judgment.

1. Article 7 of the will provides in pertinent part as follows:

> I direct my trustees under this will from the income of all my other real estate situated on both sides of the highway ... [a]fter paying all taxes and other necessary expenses to preserve and maintain said real estate to pay [annually] as convenient in equal shares the remaining income to my two sons Henry C. and John Tufton and my son in law Albert E. Newick during their life time at the death of my said son John Tufton should Tufton, Jr. be living he shall receive his [father's] share in his life time and at the ... death of my son in law Albert E. Newick, should his son Mason be living he shall receive his [father's] share [in] his lifetime, as death occurs the income shall be divided equally among the survivors upon the decease of the survivor, I give and devise said real estate to three trustees ... said trustees shall hold said real estate in trust for the purpose of a public pleasure ground forever, and for no other use whatever to be designated and known as Hartley Masons reservation[.] ... [N]o buildings thereafter shall ever be erected thereon for residential or business purposes except for public convenience and recreation all income received from bathing houses—beach and other privileges after paying all taxes on the property and other expenses shall be expended to improve and beautify the property for public enjoyment forever[.] ... [S]hould said trust-

Hartley W. Mason died in 1925 in York survived by four children and two grandchildren. Mason left a will, written by hand, which established, *inter alia,* separate trusts under Articles 7 and 9. The will created a trust in Article 7 (Article 7 Trust)[1] granting a life interest in income from the testator's probate estate to each of his sons and his son-in-law during their lifetimes.[2] Upon the death of the survivors of his sons and son-in-law and two named grandsons, the testator devised the real estate in trust to three trustees to hold as "a public pleasure ground" to be designated "Hartley Masons reservation." The will directed the trustees to contribute any surplus monies accumulated under the trust to "worthy charities, institutions and individual[s] within the township of York, ... leaving the distributions to their discretion[ ] in all cases."

Article 9 directed the will's trustees to deposit all of the testator's remaining property in a separate trust (Article 9 Trust).[3]

> ees accumulate a [surplus] "from whatever source" after maintaining the reservation in very best condition and improving the property for public use. I direct and authorize said trustees to contribute the surplus from year to year to worthy charities, institutions and individual[s] within the township of York, York County, Maine leaving the distributions to their discretion[ ] in all cases.

2. The Article 7 Trust income accrues from rental receipts of cottages and bathhouses situated on approximately five acres of oceanfront property in the Town of York that are rented to the public.

3. Article 9 of the will provides in pertinent part as follows:

> I direct my trustees under this will to deposit the proceeds of all my other property of every [description] real personal or mixed wherever found or which may remain in their hands, "after [carrying] out the foregoing provisions" with the Massachusetts Hospital Life Insurance Company of Boston, Mass. and their successor in trust and they are to pay the income annually to my four children ... in equal shares during their lifetime as death occurs to pay the income to the issue of said deceased child, but if any of my said children should die without issue the share of said deceased child shall be equally divided among the survivors on the death of the survivor the

The income from the Article 9 Trust was made payable to the testator's four children in equal shares during their lifetime, and "as death occurs [the trustee is] to pay the income to the issue of said deceased child, but if any of ... said children should die without issue the share of said deceased child shall be equally divided among the survivors[.] [O]n the death of the survivor [the trustee is] to pay the income annually to the trustees when appointed of Hartley Masons reservation [created in Article 7] at York Harbor Maine."

In 1987, the successor trustees under the will filed a petition for construction of Hartley Mason's will pursuant to 18–A M.R.S.A. § 7–201(a)(3) (1981). Upon an agreed statement of facts, the Probate Court decided numerous issues raised in the petition concerning construction of the will and the administration of the trusts. The court interpreted the will, and construed Article 7's provision directing any surplus monies to "worthy charities, institutions and individual[s] within the Town of York" as being limited to charitable institutions and individuals, and concluded that the Article 7 Trust was a valid charitable trust and not a "mixed trust." The court construed the word "issue," in Article 9, to be synonymous with "child" or "children," and the word "survivor" to refer to the survivors of the testator's children or his two grandchildren named in the will, John T. Mason, Jr. and Mason Newick.[4] As interpreted by the court, Article 9 did not violate the Rule Against Perpetuities. The Guardian has appealed those rulings.

■ Even though the decision of the Probate Court construing the will of Hartley Mason is based upon an agreed statement of facts and the will itself, this appeal is not *de novo*. We review the Probate Court's determination of the testator's intent, a factual decision, for clear error.

*Estate of Wilson*, 542 A.2d 838, 839 (Me. 1988); *Estate of Cushman*, 501 A.2d 811, 813–14 (Me.1985); *Estate of Blouin*, 490 A.2d 1212, 1215 (Me.1985); *see also Estate of Tully*, 545 A.2d 1275, 1277–78 (Me.1988).

The Guardian first challenges the Probate Court's determination that Article 7 is a valid charitable trust. He contends that institutions and individuals identified only as "worthy" are insufficiently defined to be beneficiaries of a charitable trust and that the result is a trust mixing charitable and non-charitable beneficiaries that fails under Maine law. *See Haskell v. Staples*, 116 Me. 103, 106, 100 A. 148 (1917). We disagree that the will's language compels such an interpretation. The Article 7 Trust creates the Reservation for a clear charitable purpose, and the trustees are directed to contribute surplus monies "to worthy charities, institutions and individual[s] within the Township of York ... leaving the distributions to their discretion[ ] in all cases." The Probate Court found that the testator's intent was that "worthy charities, institutions and individual[s]," be limited to charitable institutions and individuals, and concluded that the Article 7 Trust was a valid charitable trust and not a mixed trust.

It has long been held in this and many other jurisdictions that a trust for charitable purposes will not fail merely because the selection of the particular charitable beneficiaries is entrusted to the discretion of the trustees. The will, however, must manifest the testator's intention to limit the choice to charitable objects.... On the other hand when the discretion given to the trustees is so broad that it permits a selection among private and noncharitable purposes, the trust will fail.

*Grigson v. Harding*, 154 Me. 146, 151–52, 144 A.2d 870 (1958) (citations omitted).

■ In determining whether a valid charitable trust as opposed to a mixed trust

---

said Life Insurance Co. and their successors are to pay the income annually to the trustees when appointed of Hartley Masons reservation at York Harbor Maine.

**4.** John T. Mason, Jr. and G. Mason Newick are named in Article 7 of the will.

has been created, the court must look to the intent of the testator as discerned from the trust language and the entire will. *Grigson*, 154 Me. at 151, 144 A.2d 870 *see Restatement (Second) of Trusts* § 398(2) (1959).[5] In *In re Funk's Estate*, 353 Pa. 321, 45 A.2d 67 (1946), the Supreme Court of Pennsylvania interpreted a provision in a holographic will directing that the remainder of an estate should "be given to some worthy cause or institution." *Id.*, 45 A.2d at 68. Acknowledging that words such as "worthy" do not have a technical meaning in the law and can therefore characterize a class of beneficiaries broader than charities, *id.*, 45 A.2d at 69, the court concluded that:

> It should, then, be clear that our present problem resolves itself into one of interpretation of the word "worthy" as used by the testatrix. For that purpose the test to be applied is not to compare the definitions of "worthy" as set forth in standard lexicons with the legal meanings of "charitable" as above set forth. There must be kept in mind ... [that] the test is what ... the testator's words meant to him and the thought which he intended to convey by them.... On the whole, we find little difficulty in concluding that the word "worthy", as used by the testatrix, was meant by her to refer only to an institution which would fall within the legal definition of a charity, —a construction amply justified by the principle that, if there be any doubt, a testator is presumed to intend the meaning which makes his gift legally effective

rather than one which renders it nugatory and void.

*Id.*, 45 A.2d at 70 (citations omitted); *see also Bills v. Pease*, 116 Me. 98, 101, 100 A. 146 (1917) (trust including provision of payments "to such worthy and industrious persons as are not supported wholly or in part at the public expense but who may need some aid" held to be charitable trust); *Fox v. Gibbs*, 86 Me. 87, 29 A. 940 (1893) (trust for "worthy educational, charitable and benevolent purposes and object" valid charitable trust).

The Probate Court found that the overall purpose of the Article 7 trust created in a will hand drafted by a testator unsophisticated in the technicalities of the law is charitable. The court's conclusion that the Article 7 Trust is valid as a charitable trust is not clearly erroneous.

■ The Guardian next contends that the Article 9 Trust violates the Rule Against Perpetuities. The classic statement of the Rule Against Perpetuities, as first enunciated by John Chipman Gray, has been adopted by nearly every court considering the subject.

> No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.

Leach, *Perpetuities in a Nutshell*, 51 Harv.L.Rev. 638, 639 (1938). *See First Nat'l Bank v. DeWolfe*, 134 Me. 487, 490, 188 A. 283 (1936).[6] The Guardian argues

---

5. *Restatement (Second) of Trusts* § 398 (1959) provides in pertinent part as follows:

 (1) Where by the terms of the trust the trustee is directed to apply the trust property to purposes which are not limited to charitable purposes but include non-charitable purposes for which a trust or power cannot validly be created, the intended trust fails altogether, except as stated in Subsections (2), (3) and (4).

 (2) If the settlor manifested an intention that the whole of the trust property should be applied to charitable objects unless the trustee should choose to apply a part of it to non-

charitable objects for which a trust or power cannot validly be created, and his primary purpose was to apply it to the charitable objects, the power to apply the property to the other objects is invalid, and there is a valid charitable trust of the whole property.

6. Under current law, whether the Rule Against Perpetuities is violated can be determined based upon the facts existing at the termination of one or more of the life estates or lives in being. 33 M.R.S.A. § 101 (1988). That "wait and see" provision was enacted in 1954, and does not apply to this will, which was executed in 1921. *See* 33 M.R.S.A. § 106 (1988).

that the court erred in failing to construe "issue" according to its technical legal meaning, i.e. decendants ad infinitum, and in construing "survivor" as being limited to the survivor of the testator's children and his grandchildren living at the time of the execution of the will. Such an interpretation of Article 9 would result in a violation of the Rule Against Perpetuities, because it is possible that the trust corpus would not vest within twenty-one years after the death of the testator's children or grandchildren living at the time the will was executed. We disagree that the probate court was compelled to adopt such a construction of this testator's handwritten will.

■ "Issue" is commonly interpreted as meaning "[a]ll persons who have descended from a common ancestor." *Black's Law Dictionary* 746 (5th ed.1979); *Union Safe Deposit And Trust Co. v. Dudley,* 104 Me. 297, 306, 72 A. 166 (1908). When the testator shows a contrary intent, however, alternative constructions of the word "issue" are possible. "The rule deducible from authorities is that the word 'issue' is to be interpreted according to its primary signification as importing descendants unless it appears from the provisions of the will, or extrinsic circumstances proper to be considered, that the testator used the word in its secondary or restricted meaning of children." *Union Safe Deposit,* 104 Me. at 307, 72 A. 166. "The word 'issue' does not have such a fixed and limited meaning that it cannot vary with the intention of the testator who uses it." *Gannett v. Old Colony Trust Co.,* 155 Me. 248, 249, 153 A.2d 122 (1959).

Although we have stated that, absent clear evidence of a testator's contrary intent, the inclusive meaning of the word "issue" should be followed in construing wills, *Fiduciary Trust Co. v. Silsbee,* 159 Me. 6, 13, 187 A.2d 396 (1963); *New England Trust Co. v. Sanger,* 151 Me. 295, 302, 118 A.2d 760 (1955), we "recognize[ ] that each will represents, or may present, unique problems of interpretation and that, where interpretation is necessary, a precedent with respect to one will may be of slight help in construing another will, and the intent of another testator." *New England Trust Co.,* 151 Me. at 303, 118 A.2d 760; *U.S. Trust Co. v. Douglass,* 143 Me. 150, 159, 56 A.2d 633 (1948). "The cardinal rule of construction is to give effect to the intent of the testator, discerned within the four corners of the instrument, bearing in mind that such intention must be related to the time when that instrument was executed." *Cushman,* 501 A.2d at 813.

■ In construing Article 9, the Probate Court correctly reviewed the entire handwritten will of Hartley Mason, *id.,* and specifically considered the relationship between Articles 7 and 9, and the pour over of the Article 9 income into the Article 7 Trust.[7] On the death of the last survivor of the Article 9 income beneficiaries, the Article 9 trustees are to pay the annual income "to the trustees *when appointed* of Hartley Masons reservation...." (Emphasis added). The court concluded that this expressed an intent that "the same people whose death will commence the creation of the Reservation [in Article 7] are the ones after whose death the Article 9 income will be paid to the Reservation Trustees, and that this was to be done rather contemporaneously." [8] Such an interpretation resulting in Article 9 funds being available to support the Hartley Mason Reservation upon its creation is consistent with the language of both Articles 7 and 9. In light of the relationship between Articles 7 and

---

7. In interpreting the provision for application of the Rule Against Perpetuities, the probate court must construe the will as if the Rule did not exist, then apply the Rule to the will. *Strout v. Strout,* 117 Me. 357, 359, 104 A. 577 (1918). There is nothing to indicate that the probate court did not properly follow that principle.

8. Those same people are his children and two grandchildren, John T. Mason, Jr. (still living) and G. Mason Newick (since deceased, whose father, Albert E. Newick, Hartley Mason's son-in-law, is also named in Article 7).

9, we find no clear error in the Probate Court's construction of the word "issue" as synonymous with "children," and the word "survivors" as being limited to the survivors of Hartley Mason's children and two living grandchildren. *Cushman,* 501 A.2d at 813.[9]

The entry is: Judgment affirmed.

All concurring.

9. The construction given Article 9 by the Probate Court is a reasonable one and we find no clear error in that construction. *Estate of Cushman,* 501 A.2d 811, 813 (Me.1985). Another plausible construction of Article 9 that likewise would not result in a violation of the Rule Against Perpetuities would interpret "issue" to include descendants ad infinitum, while "survivors" would be limited to the testator's children. The payment to testator's issue would cease upon the death of the last survivor of the testator's children.